UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Criminal No. 19-395 (BAH) |
| | : | |
| LARRY DEAN HARMON, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MOTION FOR
EXCLUSION OF TIME UNDER THE SPEEDY TRIAL ACT**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to exclude 180 days from the calculation of time before which this matter must be brought to trial under the Speedy Trial Act, pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii).  As grounds for this motion, the Government states as follows:

**FACTUAL BACKGROUND**

On December 3, 2019, a federal grand jury in the District of Columbia returned an indictment against the defendant, Larry Dean Harmon ("Harmon" or the "defendant"), on counts of Conspiracy To Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h); Operating an Unlicensed Money Transmitting Business, in violation of 18 U.S.C. § 1960(a); and Money Transmission Without a License, in violation of D.C. Code § 26-1023(c).

The Indictment is the result of a long-term investigation into Harmon's operation of a Darknet money laundering and money transmission service from 2014 through 2017.[1]   As summarized in the Indictment, Harmon operated a suite of Darknet services including GRAMS

---

[1] The Darknet refers to a collection of hidden websites available through a network of globally distributed relay computers called the Tor network.   They are hidden websites because, unlike standard Internet websites, on the Tor network there is no publicly available listing of the Internet Protocol (IP) addresses of servers hosting websites on the Tor network.   The Darknet includes a number of hidden websites that sell illegal goods, like guns and drugs, and illegal services, like hacking and money laundering.

and HELIX. Starting in or about April 2014, Harmon launched GRAMS, a Darknet search engine that enabled users to search for drugs or other illegal goods across multiple Darknet markets at once. Starting in or about July 2014, HARMON began operating HELIX, which was linked to and affiliated with GRAMS. HELIX was a bitcoin money laundering service, commonly referred to as a bitcoin "mixer" or "tumbler."[2] HELIX allowed customers to send bitcoins in a manner designed to obfuscate the source or ownership of the bitcoins.

Harmon advertised HELIX to customers on the Darknet as a way to conceal transactions from law enforcement. Indeed, HELIX partnered with the Darknet market AlphaBay to provide bitcoin money laundering services for AlphaBay customers. At the time, AlphaBay was the largest Darknet marketplace in operation, offering a platform for customers to purchase a variety of illegal drugs, guns, and other illegal goods. The AlphaBay website recommended that customers use a bitcoin tumbler service and provided an embedded link to the Tor website for GRAMS/HELIX.

In total, HELIX laundered at least 354,468 bitcoins—the equivalent of approximately $311 million at the time of the transactions. The largest volume of funds sent through HELIX came from Darknet markets including AlphaBay, Agora Market, Nucleus, and Dream Market. In or about December 2017, HARMON began to shut down operations for GRAMS/HELIX.

On February 6, 2020, federal law enforcement agents from the Internal Revenue Service-

---

[2] Bitcoin is a virtual currency that exists in electronic form and is transacted through the Internet. The bitcoin protocol, or software, allows users to create "bitcoin addresses," roughly analogous to accounts. For security and privacy reasons, it is common for a single bitcoin user to control numerous bitcoin addresses, which are stored and controlled in a "bitcoin wallet." Each bitcoin address is controlled through the use of a unique "private key," akin to a password. Bitcoin is sometimes called a "cryptocurrency" because transactions are executed using public-key cryptography.

Criminal Investigation ("IRS-CI") and the Federal Bureau of Investigation ("FBI") arrested Harmon and executed three search warrants for Harmon's residence and office properties in the Akron, Ohio area. On the same date, authorities in Belize executed a search of Harmon's vacation property in Belize pursuant to a Mutual Legal Assistance Treaty ("MLAT") request. On February 10, 2020, based in part on information discovered through the Ohio search warrants, federal agents executed another search warrant for an apartment Harmon rented in San Mateo, California.

On February 11, 2020, a federal magistrate judge in the Northern District of Ohio held a combined identity and detention hearing for Harmon, at which the government presented live testimony from an IRS-CI agent who participated in the Ohio searches. At the conclusion of the hearing, the judge found that Harmon posed a serious risk of flight pursuant to 18 U.S.C. § 3142(f)(2)(A), based on the weight of the evidence against the defendant, the lengthy period of incarceration he would be subject to if convicted, and his significant ties outside the United States. The judge ordered that Harmon be detained without bond pending trial. *See United States v. Larry Dean Harmon*, N.D. Ohio No. 20-mj-1030, ECF No. 9-2 (Feb. 12, 2020).

The greatest part of the government's evidence in this case consists of a mass of financial records obtained via subpoena (including records from both traditional financial institutions as well as bitcoin or other virtual currency businesses); electronic records obtained from a variety of electronic service providers including Apple, Google, Yahoo, and Reddit pursuant to court-ordered search warrants; and physical and electronic evidence collected pursuant to search warrants in Ohio and California and the search pursuant to MLAT in Belize. The records are extremely voluminous, including (but not limited to):

- Thousands of pages of financial records, concerning at least 30 accounts at four different banks;[3]

- A rough estimate of approximately 40 *terabytes* of data from multiple digital devices seized during the search warrants in Ohio and California, along with 5 boxes of physical evidence, which is currently being reviewed by government investigators;

- Approximately 122 gigabytes of Google records;

- Approximately 1 gigabyte of Yahoo records;

- Approximately 14.25 megabytes of Reddit records; and

- Approximately 35.4 gigabytes of Apple records.

Government investigators have also conducted sophisticated analysis of the relevant bitcoin transactions (drawing on subpoena returns as well as publicly available blockchain information) as part of the investigation. Taken together, these records provide compelling evidence of Harmon's money laundering and unlicensed money transmitting activities.

## ARGUMENT

The voluminous discovery material and overall complexity of this case justifies a 180-day exclusion from the statutory period in which this case must be tried under the Speedy Trial Act. *See* 18 U.S.C. § 3161(h)(7)(B)(ii). Section 3161(h)(7)(A) allows the court to exclude a period of delay from the Speedy Trial Act calculation if the Court finds "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." Section 3161(h)(7)(B) sets forth the factors the court shall consider when determining whether to

---

[3] On February 20, 2020, the government made an initial production of approximately 3,886 pages of mostly financial records. The government's discovery efforts are ongoing.

exclude time pursuant. Where the court finds that the case is "so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established" the court may exclude such time as necessary to serve the ends of justice. 18 U.S.C. § 3161(h)(7)(B)(ii); *see also United States v. Speight*, 941 F. Supp. 2d 115, 118 (D.D.C. 2013) (case was complex because it alleged a "lengthy and far-reaching conspiracy involving a great deal of discoverable evidence, including wiretaps").

The Court has broad discretion to grant an exclusion of time when, in its view, the case's complexity requires that counsel have additional time to prepare in order to ensure a fair trial. *See United States v. Rojas-Contreras*, 474 U.S. 231, 236 (1985). "During the excluded time, Defendants can review the materials being produced by the Government, and both sides can engage in meaningful plea discussions." *Speight*, 941 F. Supp. 2d at 118.

Applying the factors set forth in Section 3161(h)(7)(B)(ii), courts have routinely excluded reasonable periods of time in cases similar in scale and complexity to the instant case, which spans several years and multiple jurisdictions inside and outside of the United States. *See United States v. Ditommaso*, 817 F.2d 201, 210 (2d Cir. 1987) ("[W]e agree that this multi-defendant, international drug smuggling and money-laundering case was sufficiently complex to warrant excludable time"); *United States v. Fogarty*, 692 F.2d 542, 546 (8th Cir. 1982) ("the complexity of the case, involving seven co-defendants and multiple overt acts occurring in seven states, outweighed the interests of the individual defendants" and justified exclusion of time).

Courts also look to the nature of the evidence in a "complex" case in adjudicating requests to apply the "interest of justice" provision of the Speedy Trial Act. Findings of complexity and

resulting exclusions of time have been based on the presence of voluminous discovery. *See United States v. Beech Nut Nutrition Corp.*, 871 F.2d 1181, 1197-1198 (2d Cir. 1989) (finding that case in which the government made available to defendants approximately 30,000 documents was "complex within the meaning of the Speedy Trial Act").

The instant case is "complex." First, the volume and complexity of the evidence justifies exclusion of time under the Speedy Trial Act. The Indictment charges Harmon with operation of a sophisticated Darknet enterprise spanning more than three years and involving hundreds of millions of dollars in bitcoin transactions. The government's evidence will involve complex analysis of voluminous financial and electronic records. Much of the evidence, especially the records collected during execution of the various premises search warrants around the time of Harmon's arrest, will take time to gather, distribute, and review. Second, the subject matter will likely raise novel questions of fact or law. By all accounts, this is the first U.S. prosecution involving a bitcoin mixer, and the combination of unusual elements—including the Darknet, Tor, and bitcoin—will undoubtedly raise issues of first impression and require specialized analysis and preparation for trial. The 180-day exclusion requested in this motion will serve both the United States and the defendant, and ensure that this significant, complicated case is thoroughly prepared for trial.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the United States respectfully requests that this Court enter an Order excluding from computation under the Speedy Trial Act a period of 180 days, commencing from when the last of the remaining defendants is brought before this Court

Respectfully submitted,

TIMOTHY SHEA
United States Attorney
D.C. Bar No. 437437

By: /s/ *Christopher B. Brown*
Christopher B. Brown, D.C. Bar No. 1008763
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
C. Alden Pelker, Maryland Bar
S. Riane Harper, D.C. Bar No. 230233
Trial Attorneys, U.S. Department of Justice
1301 New York Ave., N.W., Suite 600
Washington DC, 20005
(202) 252-7153 (Brown)
(202) 616-5007 (Pelker)
(202) 305-2593 (Harper)
Christopher.Brown6@usdoj.gov
Catherine.Pelker@usdoj.gov
Riane.Harper@usdoj.gov