**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 1:19-cr-00395 |
| | § | |
| LARRY DEAN HARMON | § | |

**DEFENDANT LARRY HARMON'S RESPONSE TO THE GOVERNMENT'S MOTION
FOR EMERGENCY STATUS HEARING ON DEFENDANT'S CONDITIONS OF
RELEASE AND RESTRAINING ORDER TO PRESERVE
CRYPTOCURRENCY ASSETS FOR FORFEITURE**

The Government's claim that "Harmon has begun to secretly transfer his extensive cryptocurrency holdings" [Mot. at 4] is false. Harmon has done no such thing. Rather, in compliance with all orders of this Court, Harmon remains at home, subject to electronic monitoring, supervised by Pretrial Services. He, his wife, and electronic records can prove as much. He had nothing to do with the transactions about which the Government *and Harmon* are justifiably concerned. To the extent the Government's Emergency Motion seeks relief against Harmon, it should be denied.[1]

**I.   TO THE EXTENT THE GOVERNMENT ALLEGES A VIOLATION OF
HARMON'S RELEASE CONDITIONS, THERE WAS NO SUCH VIOLATION AND
THE GOVERNMENT HAS NOT PROVEN ONE.**

The Government's Emergency Motion is notable both for what it requests *and* for what it does *not* request. Oddly considering its allegations, the Emergency Motion does not ask for revocation of Defendant's release, even while it insists that Harmon has engaged in bitcoin "transactions [that] are a direct violation of the defendant's conditions of release and illustrate

---

[1]   As further explained below, Harmon does *not* object to a court-supervised process by which both parties can properly secure seized assets pending the outcome of this litigation.

precisely the sort of behavior the government was concerned with in its original detention memorandum."  [Mot. at 4] That allegation is false.  And far from carrying the burden it would have to bear to revoke Harmon's release pursuant to 18 U.S.C. § 3142(f), the Government's motion is based almost entirely on historical allegations that form the basis of its case and on its observations of the public bitcoin blockchain.  The Government has no recent, direct evidence, and indeed none exists, that Harmon conducted or directed these thefts of bitcoin.[2]  To the extent the Government now seeks, or would seek in the future, a change in Harmon's conditions of release based on the allegations in its Emergency Motion, any change should be denied.

On the other hand, the Emergency Motion does ask for a status hearing, which Harmon of course does not oppose.  Further, the Emergency Motion asks for a restraining order to him, which he opposes as unnecessary and inappropriate under the circumstances. As any hearing on the matter would establish, and as explained below, Harmon did not conduct these transactions, lacks the capability to conduct such transactions, and thus circumstances suggest a need for unique procedures designed to ensure that property seized and in the custody of the Court is securely held.

## II.      THERE IS NO BASIS FOR A RESTRAINING ORDER DIRECTED TO HARMON, BUT HARMON DOES NOT OBJECT TO A COURT-SUPERVISED PROCESS FOR BETTER SECURING SEIZED ASSETS.

Harmon has nothing to do with the transactions about which the Government complains. Indeed he is very troubled that they occurred.  As a technical matter, the Trezor wallets holding

---

[2]      Harmon reiterates his compliance with the terms of release imposed by this Court and notes that, if required, his wife, Margo would corroborate this assertion through testimony that, among other things, at the direction of Pretrial Services, she changed the password on the computer in the home, did not share it with Harmon, and that Harmon had only accessed the computer in communication with counsel.  Harmon also notes that he would not object to subpoenas to his home's internet service provider seeking records of the home's internet traffic. They would further corroborate his compliance.

the addressees from which these transactions took place can be accessed only by someone possessing both of two things: the "seed words" (sometimes called "recovery seeds") and the "passphrase." Harmon long ago acknowledged to the Government that he has the passphrase. But, as the Government also knows, the government seized the device on which the seed words are contained; Harmon has no access to them. Importantly, *someone holding the seed words could "brute force" or use a computer program to guess, the passphrase,* but the reverse isn't true. *See, e.g.,* Trezor Wiki, *Passphrase*, available at https://wiki.trezor.io/Passphrase (explaining that the "passphrase and recovery seed belong together" and "neither can be used without the other," and that if "the passphrase is lost, it can only be found by guessing (brute-forcing)"). Put differently, while someone with the information possessed by the Government could guess the information Harmon has; Harmon cannot guess the information the Government has.

Especially under circumstances like those present here, and considering the nature of our adversarial system, each party is naturally skeptical of the other. Previously, the Government repeatedly demanded the passphrases needed to access the bitcoin addresses in question. And as the Government correctly points out, Harmon had offered the passphrase in exchange for a stipulation regarding bond. The Government refused. But Harmon has never, and does not now, object to a court-supervised, independent arrangement to secure the bitcoin stored on the devices seized by the Government.[3] Especially now that bitcoin have been stolen, Harmon simply distrusts the Government to conduct such transfers and storage independently.

---

[3]    When first notified of these allegations on Sunday April 26, 2020, undersigned counsel's response email to the prosecution team stated that Harmon had not "had any interaction with any bitcoin or bitcoin wallet" and was not opposed to having a hearing but was opposed to "being forced to transfer his bitcoin to [the prosecution team]."

Again, the information needed to conduct these transfers has, since the seizures in this matter, been in the exclusive possession of the Government.  Thus, these transfers raise a likelihood that some person with access to seized property and information in possession of the Government is responsible.   Mr. Harmon does not make such observations lightly, but under these circumstances he respectfully suggests that they must be considered.  Given the high-profile nature of this case as a result of the Government's publicity of it, and considering past instances of corruption and theft by Government agents of bitcoin in high profile matters, carefully crafted procedures to secure the remaining bitcoin are warranted. *See, e.g*. J. Rosenblatt, Bloomberg, *Second U.S. Agent Agrees to Plead Guilty to Bitcoin Theft*, (Jun 23, 2015) available at https://www.bloomberg.com/news/articles/2015-06-23/second-u-s-agent-agrees-to-plead-guilty-to-bitcoin-theft (detailing guilty plea of former DEA Agent Carl Force to stealing bitcoins in investigation of silk road); *see also* Department of Justice News: *Former Secret Service Agent Sentenced in Scheme Related to Silk Road Investigation*, Nov. 7, 2017 available at https://www.justice.gov/opa/pr/former-secret-service-agent-sentenced-scheme-related-silk-road-investigation (detailing plea and sentence of second agent convicted twice for corruption relating to his investigation, this second time for stealing "approximately 1,600 bitcoin from a digital wallet belonging to the U.S. government" and in which seized bitcoin were being held).

Thus, Harmon respectfully proposes that a third-party special master be given the devices, seed words and passphrases and that the special master retain custody of them pending further order of the Court.  *See, e.g., United States v. Stewart*, 2002 WL 1300059 (S.D.N.Y. 2002) (appointing special master in criminal prosecution to take custody of and review disputed materials in prosecution).

### III.    CONCLUSION

Mr. Harmon had nothing to do with the recent bitcoin transfers.  As will be discussed in a subsequent motion this week, Mr. Harmon has insufficient funds with which to retain counsel of his choosing and anticipates filing, this week, a Motion asking this Court to release funds for that purpose pursuant to *Luis v. United States,* 136 S. Ct. 1083, 1088 (2016) (plurality).  Mr. Harmon intends to defend himself vigorously against the Government's allegations, but he is firmly committed to doing so in compliance with the law and with the orders of this Court.

Mr. Harmon respectfully asks that the Government's Emergency Motion be denied to the extent it seeks any relief directed to him.  Mr. Harmon further asks that the Court appoint a qualified Special Master to whom the parties be directed to provide the seized bitcoin storage devices, seed words and passphrases, pending further order of the Court.

Respectfully submitted,

*/s/ Charles Flood*
Charles Flood
Flood & Flood
914 Preston at Main, Suite 800
Houston, TX 77002
(713) 223-8877; Fax (713) 223-8877
charles@floodandflood.com
Texas Bar License# 00798178
Fed I.D. 22508
**COUNSEL FOR LARRY HARMON**

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 27, 2020, I filed the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing which will send such notice of filing to all filing users.

*/s/ Charles Flood*
Charles Flood
