```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

 * * * * * * * * * * * * * * *
UNITED STATES OF AMERICA,       )  Criminal Action
                                )  No. 19-395
vs.                             )
                                )
LARRY DEAN HARMON,              )  April 28, 2020
                                )  1:01 p.m.
            Defendant.          )  Washington, D.C.
                                )
 * * * * * * * * * * * * * * *
```

**TRANSCRIPT OF TELEPHONIC PROCEEDING
BEFORE THE HONORABLE BERYL A. HOWELL,
UNITED STATES DISTRICT COURT CHIEF JUDGE**

**APPEARANCES:**

```
FOR THE GOVERNMENT:  C. ALDEN PELKER
                     CHRISTOPHER B. BROWN
                     S. RIANE HARPER
                     U.S. Attorney's Office
                     For the District of Columbia
                     555 Fourth Street, NW
                     Washington, DC 20530
                     (202) 252-7153
                     Email: Christopher.brown6@usdoj.gov


FOR THE DEFENDANT:   CHARLES FLOOD
                     914 Preston
                     Suite 800
                     Houston, TX 77002
                     713-223-8877
                     Email: Charles@floodandflood.com



Court Reporter:      Elizabeth SaintLoth, RPR, FCRR
                     Official Court Reporter


     Proceedings reported by machine shorthand, transcript
         produced by computer-aided transcription.
```

```
 1                    P R O C E E D I N G S
 2              THE DEPUTY:  Matter before the Court, Criminal
 3    Case No. 19-395, United States of America versus Larry Dean
 4    Harmon.
 5              Counsel, state your names for the record, please,
 6    beginning with the Government.
 7              MS. PELKER:  Good morning, Your Honor.
 8              This is Alden Pelker for the United States.  I'm
 9    joined telephonically by my colleagues Christopher Brown and
10    Riane Harper.
11              THE COURT:  All right.
12              MR. FLOOD:  Good afternoon, Your Honor.
13    Charles Flood for the defense, and Mr. Harmon is on with us
14    as well.
15              THE COURT:  Okay.  Good.
16              All right.  So we're here on the Government's
17    motion for a TRO.  And let me just begin -- who is on for
18    the Government again?
19              MS. PELKER:  Alden Pelker, Your Honor.
20              THE COURT:  What is your last name?
21              MS. PELKER:  Pelker, Your Honor.
22              THE COURT:  Harper, got it.
23              MS. PELKER:  Pelker.  Pelker, Your Honor.
24    P-E-L-K-E-R.
25              THE COURT:  Pelker.  Got it.
```

1            So, Miss Pelker, you are not asking for revocation
2    of Mr. Harmon's release; is that right?
3            MS. PELKER:  At this time the Government is not
4    currently asking for a revocation.
5            THE COURT:  Because, I mean, as you know from my
6    minute order that I entered in the case -- even though the
7    Government has asked for a restraining order under a
8    particular statutory provision -- the defendant has as a
9    condition of his pretrial release that he not be engaging in
10   any Bitcoin transactions, so -- cryptocurrency transactions.
11           So I have to say I was quite disturbed with the
12   suggestion that Mr. Harmon was violating the conditions of
13   his release because I am not unlike every other federal
14   judge I know -- I do not like having my orders disobeyed,
15   let alone pretrial release conditions.  And I was surprised
16   that the Government did not ask for immediate revocation of
17   Mr. Harmon's release if the Government -- and based on its
18   declaration -- plainly believes that Mr. Harmon is behind
19   these cryptocurrency violations.
20           So my first question is, why aren't you asking for
21   revocation of his release and detention despite the fact
22   that we have got COVID in different jails?  But -- why
23   aren't you asking for revocation of his release?
24           MS. PELKER:  Your Honor, I would say the
25   Government is similarly deeply troubled by the transactions;

1   and we do think this absolutely, in other times, would be
2   clear grounds for revocation.  And these transactions do
3   constitute a violation of the conditions of release.
4          When we were considering what was appropriate here
5   for the Court to ask -- and we certainly do ultimately defer
6   to the Court's discretion regarding potential revocation.
7          We were looking both to the Court's -- the
8   considerations during the Court's previous order regarding
9   detention in our hearing back when the Court was physically
10  in session as well as, frankly, some of the realities of our
11  current situation.  It certainly does not reflect any sort
12  of lack of concern or confidence on the Government's part
13  here regarding the defendant's clear violations of
14  conditions of release.
15         THE COURT:  All right. Well, I mean, of course I
16  appreciate the defendant says that he didn't engage in these
17  transactions.  But putting aside whether he directed and
18  provided the means for other people to engage in these
19  cryptocurrency transactions, you know, the defendant has
20  suggested that the Government give his ISP records for his
21  home Internet traffic to corroborate his compliance.
22         Is the Government proceeding to do that?
23         MS. PELKER:  The Government is taking certain
24  steps to determine how Mr. Harmon may have been able to
25  violate his conditions of release and conduct these

1  transactions kind of under the radar.  We have also spoken
2  with pretrial in Ohio regarding what we understand to be the
3  defendant's apparent ability to escape any sort of attention
4  from pretrial in conducting these types of transactions.
5          Unfortunately, home ISP records -- we know that
6  the defendant certainly could be communicating with other
7  individuals who would have access to mobile phones or
8  Internets within their own residences.
9          THE COURT:  Yes.  Well, since I have Mr. Harmon on
10 the phone -- Mr. Harmon, if you think you're going to be
11 cute about this and have associates of yours engaged in
12 cryptocurrency while we're waiting to find out who was
13 actually responsible, you could have your release conditions
14 revoked and you could be sitting in jail while that
15 investigation goes on.
16         Mr. Flood, I hope you explained that to him.
17         MR. FLOOD:  Yes.
18         THE COURT:  No judge -- I will repeat -- likes to
19 have his or her orders disobeyed, period.  End of story.
20         Is that understood?
21         MR. FLOOD:  Yes.
22         THE COURT:  Mr. Harmon, is that understood?
23         THE DEFENDANT:  Yes.  Yes.  I didn't.  I didn't do
24 any of that.
25         THE COURT:  Yes.  Well, that's what you say.

1       But given all of the activity that the Government
2  has described in detail in the Price declarations that is
3  associated with these Bitcoin accounts, from hidden
4  wallets within wallets and passwords and passphrases, it's a
5  very -- I am very skeptical that somebody stole the bit
6  currency -- cryptocurrency and Bitcoin cryptocurrency
7  without your direction and your knowledge.
8       Do you understand that?
9       THE DEFENDANT:  Yes.  I do know.
10      THE COURT:  Okay.  So don't try and be cute.
11 Don't try and be cute with me.
12      Let me just cut to the chase here.
13      The Government's reply says that the parties
14 have -- and I quote:  Agreed in principle to an order by
15 which the defendant is required to provide access to any and
16 all cryptocurrency within his possession, custody, or
17 control, directly to the U.S. Marshals Service.  But as of
18 the date of this filing -- which was today -- the parties
19 have not agreed to the specifics of such an order.
20      The defendant --
21      MR. FLOOD:  Your Honor, I can speak to that.
22      THE COURT:  He doesn't object to a court certified
23 independent arrangement to secure the Bitcoin stored on the
24 devices.
25      Mr. Harmon is hanging by a thread not to have his

1     release revoked.
2            What is the holdup?
3            MR. FLOOD:  Your Honor, there is no holdup.
4            We have agreed with the Government to provide the
5     passwords to the marshals, Your Honor.
6            THE COURT:  Excuse me, Mr. Flood.
7            MR. FLOOD:  This is Mr. Flood.
8            THE COURT:  Excuse me, Mr. Flood.
9            Let me finish.
10           MR. FLOOD:  I'm sorry.
11           THE DEFENDANT:  Mr. Harmon will have his release
12    conditions revoked while you-all are working this out.  So
13    let me understand -- I just want to know how long that might
14    have to be.
15           What is the holdup, Mr. Flood, for entering into
16    this agreement?
17           MR. FLOOD:  There isn't one, Your Honor.
18           Mr. Brown and I spoke earlier, before this call,
19    Your Honor.  And we have agreed to an order whereby
20    Mr. Harmon provides the passcodes and all of the information
21    requested to the marshals service, Your Honor.
22           THE COURT:  So is this resolved with that
23    agreement?
24           MR. FLOOD:  I believe so, Your Honor.
25           Obviously -- Mr. Harmon is as anxious to determine

1   who has stolen these Bitcoin as anyone, Judge.
2           THE COURT: Yes. I have read that in your papers,
3   Mr. Flood.
4           Miss Pelker, is it resolved at this point?
5           MS. PELKER: Your Honor, with the caveat that we
6   have reached out to the U.S. Marshals Service to check that
7   this is going to work for them procedurally -- it is a
8   deviation from their usual procedure. They do take custody
9   of cryptocurrency, but here they would be involved in the
10  actual seizure. We're just trying to run down with them
11  that this actually will work including given, kind of,
12  modifications to their usual working status in light of the
13  COVID-19 stay at home. We reached out to them yesterday and
14  again today, and we are just waiting to hear back.
15          But the Government certainly has continued to be
16  amenable to the solution proposed in the Government's
17  proposed order and its response. We would note that this is
18  not based on any sort of justified concern that the
19  Government can't be trusted with the turnover of the
20  defendant's keys or assets. And frankly --
21          THE COURT: You don't need to belabor that point.
22  You do not need to belabor that point. I know you have made
23  all of your points in your reply; you don't need to belabor
24  that here.
25          MS. PELKER: Thank you, Your Honor.

1           THE COURT:  I think the Government is struggling
2    to figure out all of the passphrases and all of the
3    passwords.  So their ability to have done this -- stolen
4    Mr. Harmon's Bitcoin -- is absurd; so let me just be totally
5    frank about that.
6           So is it therefore -- none of us have time to
7    waste.  Is it therefore agreed that the proposed amended
8    order that the Government submitted in connection with this
9    reply is consented to by the defendant?
10          MR. FLOOD:  Yes, Your Honor.
11          THE COURT:  All right.  I will enter that today.
12          I would like a status report by tomorrow at noon
13   from the Government whether that order has been complied
14   with, in terms of the turning over of all of the passwords
15   and passphrases, and a progress report on how you are
16   working this out with the U.S. Marshal Service before more
17   of the cryptocurrency is -- to quote Mr. Harmon -- stolen.
18          Is that understood?
19          MS. PELKER:  Yes, Your Honor.
20          THE COURT:  Mr. Flood?
21          MR. FLOOD:  Yes, Your Honor.
22          THE COURT:  All right.  Is there anything further
23   we need to address today?
24          From the Government?
25          MS. PELKER:  No, Your Honor.

1       THE COURT:  Mr. Flood?

2       MR. FLOOD:  Nothing from the defense, Your Honor.

3       THE COURT:  All right.  I will enter that order
4  promptly.

5       Okay.  You are all excused.  Thank you.

6       MR. FLOOD:  Thank you, Your Honor.

7       MS. PELKER:  Thank you, Your Honor.

8       (Whereupon, the telephone conference concludes,
9  1:12 p.m.)

                              * * * * *

                            **CERTIFICATE**

         I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby
12  certify that the foregoing constitutes a true and accurate
    transcript of my stenographic notes, and is a full, true,
13  and complete transcript of the proceedings to the best of my
    ability.

         PLEASE NOTE:  This hearing was held telephonically
15  in compliance with the COVID-19 pandemic stay-at-home orders
    and is therefore subject to the limitations associated with
16  the use of technology, including but not limited to
    telephone signal interference, static, signal interruptions,
17  and other restrictions and limitations associated with
    remote court reporting via telephone, speakerphone, and/or
18  videoconferencing.

19       This certificate shall be considered null and void
    if the transcript is disassembled in any manner by any party
20  without authorization of the signatory below.

21
        Dated this 7th day of May, 2020.
22

23      /s/ Elizabeth Saint-Loth, RPR, FCRR
        Official Court Reporter
24

25