UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>LARRY DEAN HARMON,<br><br>        Defendant. | Criminal No. 2019-CR-00395 |

**DEFENDANT'S MOTION TO DISMISS COUNTS TWO AND THREE FOR FAILURE TO STATE AN OFFENSE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v) and LCrR 47, Defendant Larry Dean Harmon respectfully moves to dismiss counts two and three of the Indictment for failure to state an offense. This Motion is supported by the following Memorandum of Points and Authorities.

**Memorandum of Points and Authorities**

**I.    INTRODUCTION**

Counts Two and Three of the Indictment [Doc. 1] both depend on the allegation that Mr. Harmon broke District of Columbia law by engaging in money transmission without a D.C. license to do so. [*See* Doc. 1, ¶¶ 18(a) & 20] But even if the central facts the Government alleges are true—even if Helix operated as alleged and even if Mr. Harmon operated it—Mr. Harmon did not engage in "money transmission" within the law of the District of Columbia, because bitcoin is not "money" as defined by D.C. law. Under D.C. law, "'[m]oney' means a medium of exchange currently authorized or adopted by a domestic or foreign government." D.C. Code § 28:1-201. Bitcoin is neither of those things. *E.g.*, *United States v. Ulbricht*, 858 F.3d 71, 83 n.3 (2d Cir. 2017) ("Bitcoin is also a completely decentralized currency, operating free of nation

states or central banks; anyone who downloads the Bitcoin software becomes part of the Bitcoin network."); *United States v. Brown*, 857 F.3d 334, 337 (6th Cir. 2017) (defining bitcoin as "a virtual, sovereign-free currency"); *United States v. Costanzo*, 956 F.3d 1088, 1091 (9th Cir. 2020) ("Bitcoin is an alternative currency that can be transferred electronically anywhere in the world with no bank and no government forms."). Thus, Counts Two and Three fail to state an offense.

## II. COUNTS TWO AND THREE FAIL TO STATE AN OFFENSE BECAUSE BITCOIN IS NOT MONEY AND THUS HELIX DID NOT REQUIRE A D.C. MONEY TRANSMISSION LICENSE

When "considering a motion to dismiss for failure to state an offense, the court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes." *United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 107 (D.D.C. 2012) (internal quotation marks and citation omitted). Here, even, though the "court must presume the allegations of the indictment to be true," *id.* (citation omitted), Counts Two and Three must be dismissed.

### A. The D.C. Code is Unambiguous that its Money Transmission Licensure Requirement Does not Apply to Bitcoin.

Statutory interpretation, as the Supreme Court has confirmed repeatedly, "begins with the language of the statute itself," and where the statute's language is plain, "that is also where the inquiry should end." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016) (internal quotation marks and citation omitted). And the D.C. Code makes plain that, unlike other states with broader statutes, its money transmission licensing requirement does not apply to the transmission or receipt of bitcoin.

The D.C. statute on which Counts Two and Three depends is § 26-1023(c), which makes it a felony to "engage[] in the business of money

transmission without a license."  In relevant part, the D.C. Code defines "[m]oney transmission" as "engaging in the business of receiving money for transmission or transmitting *money*."  D.C. Code § 26-1001 (10) (emphasis added).  Again, in the District of Columbia, "money" is a "medium of exchange currently authorized or adopted by a domestic or foreign government."  D.C. Code § 28:1-201(24); *see also id.* at cmt. 24 ("The test is that of sanction of government, whether by authorization before issue or adoption afterward, which recognizes the circulating medium as a part of the official currency of that government.").  Bitcoin is not authorized or adopted by a government and it is thus unregulated by the D.C. Code.[1]  *Cf.* D.C. Dep't of Insurance, Securities, and Banking, *What you Should Know About Bitcoin and Other Virtual Currencies* (July 11, 2014), https://disb.dc.gov/sites/default/files/dc/sites/disb/page_content/attachments/DISBConsumerGuideVirtualCurrency%202018.pdf ("Until this form of currency is regulated, D.C. residents should be aware of the increased risks.").

That "money" within the meaning of the D.C. Code is limited to that which is authorized or adopted by a government could not be more plain.  *Cf. Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070-71 (2018) (declining to expand definition of "money remuneration" to include stocks).  If the District of Columbia wants to require a license to engage in the sending and receiving

---

[1]  Some states, for example, Arizona, have similarly narrow definitions of "money," that hinge on adoption or issuance by a governmental body.  *See* Ariz. Rev. Stat. § 6-1201(9) (defining money as "a medium of exchange that is authorized or adopted by a domestic or foreign government as a part of its currency"); Va. Stat. Ann. § 8.1A-201 (24) (same).  Other States have broader definitions of "money transmission" within which bitcoin is included.  *See, e.g.*, N.C. Gen. Stat. § 53-208.42(13) (including within requirement for "money transmission" not only "money" but also "monetary value," which includes digital currency); S.C. Code § 35-11-105(9) (same).

of bitcoin, it can do what other states have done: amend its statute to include not just "money" but also "monetary value" within its reach. Or it could amend its definition of money to reach beyond that which is authorized or adopted by a government. But for now, and in 2017, such conduct is and was outside the ambit of D.C.'s money transmission laws.

The Indictment alleges only that Helix allowed users to send and receive *only* bitcoin, and not any "medium of exchange currently authorized or adopted by a domestic or foreign government;" the Indictment fails to state an offense in Counts Two and Three.

      **B.**    **Even if the Code is Ambiguous as to the Meaning of Money, the Rule of Lenity Precludes the Interpretation on Which Counts Two and Three Depend.**

That bitcoin is not "money" and thus its transmission is not regulated by the D.C. Code is plain on the face of the Code. But even if the Code is somehow ambiguous as to what is and isn't regulated under it, any "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Skilling v. United States*, 561 U.S. 358, 410 (2010) (citation omitted). Such a construction "not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain . . . [i]t also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead." *United States v. Santos*, 553 U.S. 507, 514 (2008).

**III.**    **COUNT TWO ALSO FAILS TO STATE AN OFFENSE BECAUSE HELIX WAS NOT A "MONEY TRANSMITTING BUSINESS" UNDER 18 U.S.C. § 1960.**

Count Two also fails to state an offense because, at least as that term was defined during the alleged acts in this case, Helix was not a "money transmitting business" within the meaning of 18 U.S.C. § 1960. In familiar terms, a money transmitting business under Section 1960, even an informal

one, "operates in a similar fashion to a Western Union business." *United States v. Elfgeeh*, 515 F.3d 100, 108 (2d Cir. 2008) (quoting testimony of FBI agent describing hawala organization as money transmission business); *United States v. Bah*, 574 F.3d 106, 110 (2d Cir. 2009) (describing Government's evidence that "certain customers came to [the defendant's] restaurant in the Bronx, delivered U.S. currency, and instructed [the defendant] to deliver the equivalent value of local currency to recipients in West Africa").

Plainly, everyone who sends or receives money, or bitcoin, is not a money transmitting business. Even someone, or some business, who sends or receives a lot of money or does so many times isn't a money transmitter under federal law, even though the ambiguous text of the statute could be read that way. Thus, the Second Circuit has sustained the statute against a constitutional challenge only by adhering to a specific definition of "money transmitting business" that Mr. Harmon does not satisfy. *United States v. Velastegui*, 199 F.3d 590, 593 (2d Cir. 1999) (construing statute narrowing in order to ensure the statute gives "fair warning of the conduct that it makes [the charged offense] a crime"). That court defined "business" as one that "receives money from a customer and then, for a fee paid by the customer, transmits that money to a recipient in a place that the customer designates, usually a foreign country." *Id.* at 592; *see also United States v. Banki*, 685 F.3d 99, 113 n.9 (2d Cir. 2012), as amended (Feb. 22, 2012) (to satisfy Section 1960, business "must transmit money to a recipient in a place that the customer designates, for a fee paid by the customer"); *see also* 31 C.F.R. § 1010.100(ff)(5)(i) (2014) (defining "money transmission services" to require transmission of funds to "another location or person"). Put differently, these cases construe Section 1960 as requiring a money transmitting business to involve the transmission of money to a *third party or location*. *See also United States v. Faiella*, 39 F. Supp. 3d

544, 546 (S.D.N.Y. 2014) (defining same C.F.R. subsection in the context of a bitcoin transmission case as "require[ing] transmission of funds to another location or person").

Relying on this same subsection of the C.F.R., FinCEN guidance in place *at the time of the alleged offenses* in this case similarly stressed that to qualify as "money transmission services" meant "the acceptance . . . [and] the transmission of currency, funds, or other value that substitutes for currency *to another location or person*." *Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies*, FIN-2013-G001 (Mar. 18, 2013) (the "2013 Guidance"), https://www.fincen.gov/resources/statutes-regulations/guidance/application-fincens-regulations-persons-administering (emphasis added) (quoting 31 CFR § 1010.100(ff)(5)(i)(A)). This same 2013 Guidance also noted that "a person is an exchanger [and thus regulated] . . . if the person accepts [bitcoin] from one person and transmits it to another person [as part of its business]. *Id*.

Here, the Indictment nowhere alleges that Helix transmitted bitcoin to "another person or location." Generally, the Indictment alleges that "Helix was designed to be a 'bitcoin tumbler' that 'cleans' bitcoins by providing customers with new bitcoins." [Doc. 1, ¶ 5] That, too, isn't money transmission within the meaning of § 1960. In the sole actual transaction described in the Indictment, it alleges that on November 8, 2016 an FBI agent sent bitcoin to Helix and that Helix "exchanged the bitcoin for an equivalent amount of bitcoin" that was returned to the agent himself. [*Id.*, ¶ 7]

Therefore, because, even if true, the conduct alleged in Count Two is not within the ambit of the money transmission regulations, it fails to state an offense for this additional reason.

## IV. CONCLUSION

Counts Two and Three of the Indictment fail, even if true, to state an offense. Thus, Mr. Harmon respectfully requests that they be dismissed.

Dated: May 20, 2020

/s/ *Charles Flood*
Charles Flood
Flood & Flood Law Office
914 Preston at Main, Suite 800
Houston, TX 77002
(713) 223-8877; Fax (713) 223-8877
charles@floodandflood.com
Texas Bar License# 00798178
Fed I.D. 22508

Jean-Jacques Cabou*
Alexis E. Danneman*
Perkins Coie
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012

**Pro hac vice motion forthcoming*

Attorneys for Defendant Larry Dean Harmon

147881216.2