UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Criminal No. 19-cr-395 (BAH) |
| | : | |
| LARRY DEAN HARMON, | : | |
| | : | |
| Defendant | : | |

### GOVERNMENT'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL OPPOSITION AND SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE OF FUNDS

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully moves to file the following Supplemental Opposition to the Defendant's Motion for Release of Funds, ECF No. 32, in order to supplement the record with additional evidence that has become available since the date of the government's previous filing.[1]

### ARGUMENT

In the government's Opposition to Defendant's Motion for Release of Funds, the government argued, *inter alia*, that the defendant had not carried his burden of establishing financial need to retain counsel of choice because "the government believes the defendant himself secretly transferred approximately 712.6 BTC after being released on bond." ECF No. 40, at 8. The government's view remains unchanged. For the reasons outlined in the government's Opposition, strong circumstantial evidence and the timing of the transactions confirms that the

---

[1] The government notified the defense about its intention to supplement the record on Friday, June 12, 2020, and consents to any reasonable extension of the defendant's June 17, 2020 deadline to file replies in support of the pending defense motions.

defendant secretly transferred the missing 712.6 BTC and retains possession, custody, or control over it.  *See* ECF No. 40, at 8-10 & ECF No. 40-2.

Since the date of the government's filing, however, new information has come to light suggesting that a close personal associate of the defendant ("INDIVIDUAL A") also may have been involved in the secret transfers of the missing bitcoin.  Based on non-content electronic records obtained pursuant to Court order and produced to the government last week, both the defendant and INDIVIDUAL A received email messages from "no-reply@trezor.io" in February, March, and April 2020—prior to and roughly contemporaneous with the transfers of the missing 712.6 BTC between April 19, 2020 and April 24, 2020.  The government does not have access to the content of these messages.  The government, however, is aware that one of the ways to remotely reconstitute a bitcoin wallet stored on a Trezor cryptocurrency storage device using recovery seeds and a passphrase involves the creation of an online Trezor account at the domain trezor.io.  Receipt of automated messages from "no-reply@trezor.io" is therefore consistent with a user remotely reconstituting a Trezor wallet.

Specifically, the non-content email account records show that the defendant's email account received messages from "no-reply@trezor.io" on February 20, 2020;[2] March 23, 2020; and April 16, 2020.  *See* Ex. A (excerpts).  As noted in the government's Opposition, the defendant also accessed his Dropbox cloud storage account on March 20, 2020; March 26, 2020, April 27, 2020; and May 19, 2020.  ECF No. 40, at 9; ECF No. 40-2.  Meanwhile, INDIVIDUAL A received messages from "no-reply@trezor.io" on April 19, 2020; April 20, 2020; April 25, 2020; and April 26, 2020.  *See* Ex. B (excerpts).  This new evidence is consistent with both the defendant and

---

[2] The defendant was in pretrial detention on February 20, 2020, but his account continued to receive email messages during that time.

2

INDIVIDUAL A seeking to reconstitute the Trezor wallets containing the defendant's illicit HELIX proceeds.

The new evidence suggests INDIVIDUAL A may have been working *with* the defendant to transfer the missing 712.6 BTC.  The government is aware the defense believes INDIVIDUAL A alone was responsible for the transfers.  On May 13, 2020, defense counsel first communicated this theory to the government.  The government subsequently received an unsolicited tip from a third party, who was in communication with *both* the defendant and INDIVIDUAL A, to the effect that INDIVIDUAL A transferred the 712.6 BTC without the defendant's knowledge or permission.  But it is unlikely that INDIVIDUAL A acted alone, for several reasons:

- First, whoever transferred the 712.6 BTC would have had to reconstitute three hidden wallets originally created on the defendant's Trezor device, using a combination of the defendant's recovery seeds and passphrase.  It is difficult to believe that INDIVIDUAL A could have obtained this secret information—the keys to the defendant's massive cryptocurrency wealth accumulated from his years of operating HELIX—without the defendant's cooperation.  And if INDIVIDUAL A could defeat the defendant's security safeguards and seize the missing 712.6 BTC without the defendant's cooperation, it is difficult to understand why INDIVIDUAL A waited until the defendant was released on bond to execute the scheme.

- Second, evidence shows the defendant himself engaged in significant computer activity consistent with transferring the 712.6 BTC.  Shortly after being released on bond, the defendant accessed his Dropbox cloud storage account on March 20, 2020 and March 26, 2020, from an Internet Protocol ("IP") address previously associated with his account.  The defendant received messages from "no-reply@trezor.io" on March 23,

2020 and April 16, 2020. The defendant obviously had access to his own Trezor credentials because he was able to produce them to the government pursuant to the Court's Restraining Order on April 29, 2020.

- Third, the timing and sequence of the secret bitcoin transactions points to the defendant's involvement. The transactions occurred only after the defendant was released on bond. There was a flurry of activity between April 19 and April 24, 2020—and certain additional transfers on April 25, 2020—and the transfers stopped after the government first alerted defense counsel by email on April 26, 2020. Then, the day after the government raised the issue of the missing 712.6 BTC in its Opposition, the funds were transferred again—first, on June 4, 2020, back to the original Trezor wallets known to be accessible to the defendant and then, on June 5, 2020, to a new set of bitcoin wallets.

- Fourth, INDIVIDUAL A's purported motive is far from clear. Why would INDIVIDUAL A choose this moment to secretly seize control of millions of dollars of the defendant's illicit bitcoin proceeds? And why would INDIVIDUAL A start, or stop, transactions in ways that appear responsive to actions by the government in this litigation? On the other hand, the defendant has an obvious motive to use his bitcoin assets to finance a flight from prosecution, and/or to place them beyond the Court's reach to frustrate any possible forfeiture.

In sum, the new evidence raises questions about INDIVIDUAL A, but it does not undermine evidence pointing to the defendant's involvement in secretly transferring and retaining access to the missing 712.6 BTC. This issue must be resolved before the Court can find that the

defendant has carried his threshold burden of establishing financial need in order to justify a *Monsanto* hearing.  *See United States v. Emor*, 794 F. Supp. 2d 143, 150 (D.D.C. 2011).

## CONCLUSION

The government respectfully moves for leave to file the foregoing Supplemental Opposition to the Defendant's Motion for Release of Funds Needed To Secure Counsel or Alternative Motion for a Hearing.  For the foregoing reasons, and such other reasons as appear in the record, the defendant's Motion should be denied.

        Respectfully submitted,

        MICHAEL R. SHERWIN
        ACTING UNITED STATES ATTORNEY
        New York Bar No. 4444188

BY:   */s/ Christopher B. Brown*
        Christopher B. Brown, D.C. Bar No. 1008763
        Assistant United States Attorney
        555 4th Street, N.W.
        Washington, D.C. 20530
        C. Alden Pelker, Maryland Bar
        S. Riane Harper, D.C. Bar No. 230233
        Trial Attorneys, U.S. Department of Justice
        1301 New York Ave., N.W., Suite 600
        Washington, D.C. 20005
        (202) 252-7153 (Brown)
        (202) 616-5007 (Pelker)
        (202) 305-2593 (Harper)
        Christopher.Brown6@usdoj.gov
        Catherine.Pelker@usdoj.gov
        Riane.Harper@usdoj.gov