UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>   v.<br><br>LARRY DEAN HARMON,<br><br>             Defendant. | Criminal No. 2019-CR-00395 |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
COUNTS TWO AND THREE FOR FAILURE TO STATE AN OFFENSE**

**I.      INTRODUCTION**

Mr. Harmon's Motion to Dismiss Counts Two and Three (ECF No. 31) set forth the reasons why the text of the indictment, read against the text of the statutes charged in these counts, requires that they be dismissed. Principally, they must be dismissed because they both depend on bitcoin being "money" within the meaning of D.C. law. As the Government nowhere disputes, the only definition of "money" anywhere in the D.C. Code says that "'[m]oney' means a medium of exchange currently authorized or adopted by a domestic or foreign government." D.C. Code § 28:1-201. Bitcoin is neither of those things.

And the Response doesn't challenge that either. Instead, in seeking to sustain these counts, the Government in part seeks to define "money" as other courts have done applying *other* statutes. But no matter what bitcoin might be in some states or under federal law, bitcoin isn't money under D.C. law. And the question presented here is what the D.C. Code prohibits, not what other courts have found that other laws, with *different* definitions, prohibit. Because the D.C. Code nowhere requires a license to transmit bitcoin, Counts Two and Three fail to state an offense.

The Motion further explained that Count Two fails for the additional reason that HELIX was not a "money transmitting business" within the meaning of 18 U.S.C. § 1960

because the Indictment fails to allege that HELIX did anything other than provide bitcoin back to the user from whom it was sent. Here the Government responds by making much of a difference between the regulatory and statutory definitions. But both ultimately depend on, and the indictment has alleged on a "transfer" of funds, which must involve some person or location other than the person from whom, or the location from which, that transaction originated. Otherwise it's not a transfer at all.

In short, because bitcoin is not "Money" in the District of Columbia and because a "money transmission" transaction must involve more than one person or place, and because the Indictment has not alleged that those elements are satisfied here, Counts Two and Three must be dismissed.

## II.   BECAUSE BITCOIN IS NOT MONEY, COUNTS TWO AND THREE SHOULD BE DISMISSED

### A.   Bitcoin is not "Money" in the District of Columbia, Even if it Is "Money" Elsewhere.

The Government does not contest that the only statutory definition of "money" in the D.C. Code excludes bitcoin. Confronted with this reality, the Government argues instead that "money" should be defined with reference to federal law, the law of other states, and to dictionary definitions. Pointing out that the cited definition comes from that part of D.C. Code enacting the UCC, the Government insists that we should not "import[] this specialized definition into the unrelated criminal and regulatory enforcement regime created by the Money Transmitters Act." (ECF No. 39 at 7) Why? Not only is that the only definition of money in the entire D.C. Code, and not only do courts use UCC-based definitions in other contexts, but also the very same definition Mr. Harmon relies on is used to define "money" in the Uniform Money Services Act. Unif. Money Services Act § 102 ("Money means a medium of exchange that is authorized or adopted by the United States or a foreign government"). The Government's insistence that the Court ignore the only definition of "money" in the D.C. Code must fail.

Where, as here, state law provides no other definition, there is no justification for assuming the only definition provided is inapplicable. Furthermore, courts look to UCC definitions in other contexts, despite the Government's insistence to the contrary. For instance, in another case involving the definition of financial instruments, the Southern District of New York turned to the UCC definition where, unlike the cases the Government points to, statutes were otherwise silent and where the UCC definition did not otherwise conflict. *Algemene Bank Nederland v. Soysen Tarim Urunleri Dis Ticaret Ve Sanayi, A.S.*, 748 F. Supp. 177, 181 (S.D.N.Y. 1990); *cf. also Applicability of UCC definition to non-UCC transactions,* 1B Anderson U.C.C. § 1-201:118 [Rev] (3d. ed.) (Noting that "in the absence of a definition of 'conspicuous', other statutes and regulations will tend to borrow the UCC definition of 'conspicuous'").[1]

As discussed in the Motion, if the District of Columbia wants to require a license to engage in the sending and receiving of bitcoin, it can do what other states have done: amend its statute to include not just "money" but also "monetary value" within its reach. Or it could amend its definition of money to reach beyond that which is authorized or adopted by a government. But for now, and in 2017, such conduct is and was unregulated. *Cf.* D.C. Dep't of Insurance, Securities, and Banking, *What you Should Know About Bitcoin and Other Virtual Currencies* (July 11, 2014), https://disb.dc.gov/sites/default/files/dc/sites/disb/page_content/attachments/DISBConsumerGuideVirtualCurrency%202018.pdf ("Until this form of currency is regulated, D.C. residents should be aware of the increased risks.").

Thus Count Three should be dismissed.

---

[1] As further discussed in the motion, to the extent D.C. law is ambiguous, and it isn't, any "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Skilling v. United States,* 561 U.S. 358, 410 (2010) (citation omitted).

### B. As Pled, Count Two is Dependent on D.C.'s Definition, Which Bitcoin does not Satisfy

The Government's Response insists that Count Two can be sustained even if bitcoin isn't "money" under the D.C. Code because "HELIX plainly satisfies the definition of a money transmitting business that is required to register with FinCEN." (ECF No. 39 at 16) The Government goes on to claim, for the first time in this case, that failure to register, alone, would be "one of the alternative bases for finding that HELIX was a money transmitter." *Id*., at 19.  But, even assuming that failure to register with FinCEN is *alone* sufficient to constitute money laundering, the Indictment doesn't say that.  Rather, Count Two of the Indictment charges a violation of 18 U.S.C. § 1960(a) based on Mr. Harmon operating a business that lacked the needed DC money transmission, failed to register with FinCEN "and [o]therwise involved the transportation and transmission of funds known to HARMON to have been derived from a criminal offense." (ECF No. 1 at ¶18(a)-(c))

"Adherence to the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury." *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001); *see also United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 107 (D.D.C. 2012) (when "considering a motion to dismiss for failure to state an offense, the court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes.") (internal quotation marks omitted).

The specific allegation of Count Two of the Indictment is that Mr. Harmon broke the law by doing all three of the things listed in Paragraph 18.  The Government cannot now save Count Two by insisting that it could have charged the same crime differently. As it stands, Mr. Harmon is charged with doing three allegedly illegal things, as set forth in subparagraphs (a), (b) and (c).  And because "operat[ing] without an appropriate money

transmission license" is not, as explained above "a felony under District of Columbia law" (ECF No. 1. at ¶18(a)) Count Two fails to state an offense.[2]

### III. COUNT TWO ALSO FAILS TO STATE AN OFFENSE BECAUSE HELIX WAS NOT A "MONEY TRANSMITTING BUSINESS" UNDER 18 U.S.C. § 1960.

As described in the Motion, a money transmitting business under Section 1960, even an informal one, "operates in a similar fashion to a Western Union business." *United States v. Elfgeeh*, 515 F.3d 100, 108 (2d Cir. 2008) (quoting testimony of FBI agent describing hawala organization as money transmission business); *United States v. Bah*, 574 F.3d 106, 110 (2d Cir. 2009) (describing Government's evidence that "certain customers came to [the defendant's] restaurant in the Bronx, delivered U.S. currency, and instructed [the defendant] to deliver the equivalent value of local currency to recipients in West Africa"). In other words, such a business sends money from one person or place to another person or place.

#### A. A "Money Transmitting Business" Must Send Money To a Person or Place Different From That Where it Started.

The Indictment does not properly allege that HELIX transmitted bitcoin to another person or place. *See* 31 C.F.R. § 1010.100(ff)(5)(i) (2014) (defining "money transmission services" to require transmission of funds to "another location or person"); *see also United States v. Faiella*, 39 F. Supp. 3d 544, 546 (S.D.N.Y. 2014) (defining same C.F.R. subsection in the context of a bitcoin transmission case as "requir[ing] transmission of funds to another location or person") (internal quotation marks omitted). As noted in the Motion, FinCEN guidance in place *at the time of the alleged offenses* in this case similarly

---

[2] Counsel note cases, including from this District, holding that pleading a charge in the conjunctive even where the statute speaks in the disjunctive, is appropriate. *See, e.g., United States v. Carter,* 917 F. Supp. 1, 3 (D.D.C. 1995) ("[T]he fact that an indictment may charge in the conjunctive rather than the statutory disjunctive is not only permissible but may indeed be required."). Unlike here, though, in such cases there was no doubt about what was or wasn't a crime. Rather, they pled conjunctively to alert "the defendant that the government will try to prove each of the connected offenses listed." None of those cases hold that it is appropriate to plead, as the Government did here, that something is a crime if it is not, in fact, a crime.

stressed that to qualify as "money transmission services" meant "the acceptance . . . [and] the transmission of currency, funds, or other value that substitutes for currency *to another location or person.*" *Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies*, FIN-2013-G001 (Mar. 18, 2013) (the "2013 Guidance"), https://www.fincen.gov/resources /statutes-regulations/guidance/application-fincens-regulations-persons-administering (emphasis added) (quoting 31 CFR § 1010.100(ff)(5)(i)(A)). This same 2013 Guidance also noted that "a person is an exchanger [and thus regulated] . . . if the person accepts [bitcoin] from one person and transmits it to another person [as part of its business]. *Id*. In all events, the key is that bitcoin must go to some person or some place other than who or where it started.

In its Response (at 16) the Government points to statements in the Indictment about what HELIX "enabled" people to do, what third party websites "recommended," and what one FBI agent did on one occasion. But none of those show what needs to be shown: transmission of money to a *third party or location*. What HELIX enabled is not the same as what it did. Neither are recommendations of a third-party website any proof of money transmission by HELIX to a third party or location. And, finally, neither is an allegation that an FBI agent sent bitcoin to himself proof of that. None of the allegations in the Indictment point to any person or location different from the person sending money to HELIX.

### B.   31 U.S.C. § 5330 Still Requires that Money be Sent to a Different Party or Place.

The Government also argues, in its Response that HELIX is a money transmitting business because, the C.F.R. aside, "HELIX satisfies the definition of money transmitting business required to register under the statute." (ECF No. 39 at 17) The Response goes on to block quote 31 U.S.C. § 5330(d)(1)-(2), emphasizing certain words including "transmission" and "transfer" and going on to stress "Congress's intent to capture emerging technologies." *Id.* at 16-17. But none of that language says, and certainly none of the

courts in the cases cited in footnote 5 of the Response have held, that something is a money transmission business without finding that it involved the transmission of funds, which include bitcoin, to some third party or some other location.

Mr. Harmon's argument does not depend on the argument that bitcoins are not "funds" under § 5330.  We agree that argument is foreclosed, and we have never made it.  Rather, Mr. Harmon argues that in order to be a "money transmitting business" a person or business must transmit money to someone or someplace else.

Even Government acknowledges, as it must, that the Indictment claims that "transmission to another person or location was the core of HELIX's business model." (ECF No. 39 at 22)  The Government goes on to argue that HELIX required "transferring funds to new locations -- specifically, to new bitcoin addresses." *Id.*,  But addresses on the Bitcoin blockchain are not a place; nor are bitcoin transactions "hawala-type transaction in which a hawaladar accepts funds…and transfers an equivalent amount of funds to the same individual's bank account *in another country*."  (emphasis added) *Id.*, at 23 n. 10.  If anything, as pled, transactions on HELIX are more like a billbreak machine, in which a user inserts, for instance, a $100 bill and in return gets back four $20s, three $5s, four $1s and pays a dollar for the convenience.

The Government's attempt to analogize bitcoins to bank account balances is similarly inapt. One of Bitcoin's basic principles is that it is "decentralized digital currency without a central bank or single administrator that can be sent from user to user on the peer-to-peer bitcoin network without the need for intermediaries."  Wikipedia, BITCOIN, https://en.wikipedia.org/wiki/Bitcoin (last edited June 29, 2020).  Thus there is no such thing as the Government's hypothetical "bitcoin equivalent to a bank employee initiating a wire transfer." (ECF No. 39 at 25)  And the movement of a particular bitcoin to an address secured by a different public key from the address at which it started is in no way a change in location.

None of this, of course, is to say that a person cannot violate § 5330 using bitcoin. Again, Mr. Harmon concedes as much. But, where bitcoin is involved, a violation of § 5330 must involve a transfer to "another person," because all bitcoin transfers take place in the same "location" -- the Bitcoin blockchain.

## IV. CONCLUSION

Counts Two and Three of the Indictment fail, even if true, to state an offense. Thus, Mr. Harmon respectfully requests that they be dismissed.

Dated: July 1, 2020

By: */s/ Jean-Jacques Cabou*
Jean-Jacques Cabou\*
Alexis E. Danneman\*
Perkins Coie LLP
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012

Charles Flood
Flood & Flood
914 Preston at Main
Suite 800
Houston, Texas 77002

\**admitted pro hac vice*

Attorneys for Defendant Larry Dean Harmon

## CERTIFICATE OF SERVICE

      I hereby certify that on July 1, 2020, I filed the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing which will send such notice of filing to all filing users.

                                                 */s/ Indy Fitzgerald*

148463166.2