UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | Criminal No. 19-cr-395 (BAH) |
| | : | |
| **LARRY HARMON,** | : | |
| | : | |
| **Defendant** | : | |

## NOTICE OF SUPPLEMENTAL AUTHORITY

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits the following Notice of Supplemental Authority relating to the Court's July 24, 2020 ruling that "bitcoin qualifies as money under the [District of Columbia Money Transmitters Act]." ECF No. 59, at 33.

1. On July 2, 2020, defendants in *United States v. E-Gold Ltd.*, No. 07-cr-109 (ABJ), filed a post-conviction Petition for Writ of Error Coram Nobis. Because post-conviction litigation is handled by a separate division of the U.S. Attorney's Office, Special Proceedings, the prosecution team in this case only became aware of the *E-Gold* petition at the end of August as a result of internal communications within the U.S. Attorney's Office. Among other things, the *E-Gold* defendants attached as an exhibit to their petition a heretofore non-public letter sent by the District of Columbia Department of Insurance, Securities and Banking ("DISB") on June 23, 2016 to a company called COEPTIS regarding that company's obligations under the District of Columbia Money Transmitters Act ("MTA") (hereinafter, the "DISB Letter"). The DISB Letter included a short memorandum prepared in January 2015 by DISB's Office of General Counsel, opining that a company operating as a so-called "two party virtual currency business model" did

not require a license under the MTA because virtual currency does not count as "money" under the definition in Black's Law Dictionary.

2. The government is bringing the DISB Letter to the attention of the Court out of an abundance of caution. The government respectfully disagrees with the analysis contained in the DISB Letter, which rests entirely on a single definition of the term "money" in Black's Law Dictionary. The DISB Letter did not consider other dictionary definitions, the way bitcoin and other virtual currencies are used in the Darknet economy, analogous federal case law, or the aims and purposes of money transmitter regulation under the MTA. The DISB Letter, from 2016, also appears to stand in tension with the agency's practice of licensing virtual currency companies including BitPay (MTR 1496848), Circle (MTR 1201441), Coinbase (MTR1163082), CoinList (MTR1785267), and TZero Crypto (MTR1749137). It is far from clear whether the DISB Letter represents DISB's present understanding of the MTA.

3. The DISB Letter should not alter the Court's analysis of the MTA in its Memorandum Opinion of July 24, 2020, ECF No. 59. This Court engaged in a much more thorough and far-reaching analysis of the MTA's statutory text, based on the ordinary meaning of the term "money," the functional use of bitcoin as a "medium of exchange, method of payment, and store of value," analogous federal case law, the interplay between the MTA and other provisions of the D.C. Code, the "purposes and objects" of the MTA, as well the historical *public* practice of DISB and the legislative history of the MTA. *See* ECF No. 59, at 14-33. The Court considered—and rejected—the very same Black's Law Dictionary definition that formed the sole basis for the DISB Letter's conclusion. *See id.*, at 15 n.6 (acknowledging definition in Black's but finding that "the D.C. Council intended for money to take its ordinary meaning in the MTA" rather than a specialized legal definition); *see also United States v. Faiella*, 39 F. Supp. 3d 544, 545 n.2

(S.D.N.Y. 2014) ("The parties make reference, instead, to Black's Law Dictionary, which would only be relevant if Congress intended that these terms be given special meanings as legal 'terms of art'—something not remotely suggested in Section 1960."). The Court *accurately* cited DISB's historical practice of licensing virtual currency businesses, ECF No. 59, at 26-27, but the agency's practice formed only a small part of the Court's overall analysis. To be sure, an agency's interpretation of its own statutes may be considered persuasive, but the non-public DISB Letter is not entitled to any particular deference under the circumstances here. *See United States v. Mead*, 533 U.S. 218, 227-234 (2001) (declining to grant *Chevron* deference to agency ruling that was "far removed . . . from notice-and-comment process," "stop[ped] short of third parties," and was "conclusive only as between [the agency] and the [party] to whom it was issued"). In short, the minimal analysis contained in the non-public DISB Letter is not controlling upon this Court and should not be persuasive, where this Court, relying on the proper tools of statutory interpretation, reached its own conclusion as a matter of law.

                Respectfully submitted,

                MICHAEL SHERWIN
                ACTING UNITED STATES ATTORNEY
                New York Bar No. 4444188

BY:    */s/ Christopher B. Brown*
                Christopher B. Brown, D.C. Bar No. 1008763
                Assistant United States Attorney
                555 4th Street, N.W.
                Washington, D.C. 20530
                C. Alden Pelker, Maryland Bar
                S. Riane Harper, D.C. Bar No. 230233
                Trial Attorneys, U.S. Department of Justice
                1301 New York Ave., N.W., Suite 600
                Washington, D.C. 20005
                (202) 252-7153 (Brown)
                (202) 616-5007 (Pelker)
                (202) 305-2593 (Harper)
                Christopher.Brown6@usdoj.gov
                Catherine.Pelker@usdoj.gov
                Riane.Harper@usdoj.gov