

# Government of the District of Columbia
## Department of Insurance, Securities and Banking

**Stephen C. Taylor**
**Commissioner**

June 23, 2016

William A. Cunningham
Chief Executive Officer
COEPTIS
927 New Haven Avenue, Suite 209
Melbourne, Florida 32901

Re: Money Transmitter License

Dear Mr. Cunningham:

This is in response to your letter, dated October 14, 2015 in which you request an opinion as to whether the company of CMO, Inc., dba COEPTIS (COEPTIS)[1] needs to obtain a money transmitter license in the District of Columbia, which would be issued by the Department of Insurance, Securities and Banking.

According to the COEPTIS' Global Standard System Overview, which is attached hereto as Exhibit A and incorporated herein by reference, COEPTIS intends to launch a Global Standard System (System) which will use a privately issued currency (AUG) that will be 100% reserved by physical gold. The System will only operate online and will not have any physical locations in the District of Columbia, but it will conduct business with District of Columbia residents.

As described in Exhibit A, the System will use a closed/centralized settlement platform (Settlement Platform) to make internet payments. National currency will not be received, dispensed, or used on the Settlement Platform. COEPTIS will not provide for any conversion of AUG to national currency or national currency for AUG. Further, according to Exhibit A, exchange transactions, using national currency, will only be conducted by independent financial institutions that are engaged in exchange services. These financial institutions, which will be independent, will be appropriately licensed or authorized in the state(s) and/or country in which they conduct business.

---

[1] Per an e-mail dated June 16, 2016, Carol Van Cleef, a partner at Manatt, Phelps & Phillips, LLP informed the Department of Insurance, Securities and Banking (Department) that CMO, Inc. had decided to use Global Standard System as the dba and not COEPTIS. However, since the standard system overview, submitted to the Department, uses the term COEPTIS throughout, that term will be employed herein.

Based on both Exhibit A and Exhibit B, which is attached hereto and incorporated herein by reference, the Department's Banking Bureau has concluded that COEPTIS does not require a money transmitter license pursuant to the District of Columbia Money Transmitters Act of 2000, D.C. Official Code §§ 26-1001 *et. seq.* (2012 Repl.), because "the transactions as described do not involve the transmission of money." *See* e-mail from Tiwana Hicks, Department Licensing Manager, attached hereto as Exhibit C and incorporated herein by reference. In Exhibit C Ms. Hicks, citing Exhibit B, notes that "COEPTIS is engaged in a two party business model that does not involve the transfer of 'money' or 'a medium of exchange authorized or adopted by a government as part of its currency.'"

Therefore, based on the position of the Banking Bureau and an analysis of Exhibits A, B, and C, CMO, Inc., dba COEPTIS does not require a money transmitter license.

If, however, any of the facts in the attached Exhibits change, including any change in ownership or name, CMO, Inc., dba COEPTIS, shall submit those changes to the Department for further review and analysis.

Thank you.

Charlotte W. Parker
Assistant General Counsel

Attachments:

Exhibit A – COEPTIS' Global Standard System Overview
Exhibit B – Memorandum to Chester McPherson, Acting Commissioner for the Department of Insurance, Securities and Banking, from Christopher Weaver, Associate Commissioner for Banking
Exhibit C – E-mail from Tiwana Hicks, Licensing Manager, Banking Bureau, Department of Insurance, Securities and Banking

cc: Carol R. Van Cleef
Manatt, Phelps & Phillips, LLP
1050 Connecticut Avenue, NW, Suite 600
Washington, DC 20036

2

Government of the District of Columbia
Muriel Bowser, Mayor
Department of Insurance, Securities and Banking




Chester A. McPherson
Acting Commissioner

| | |
|---|---|
| **To:** | Chester McPherson<br>Acting Commissioner |
| **Thru:** | Simone Manigo-Truell dos Santos, Esq.<br>Assistant General Counsel |
| **From:** | Christopher Weaver<br>Associate Commissioner for Banking |
| **Subject:** | Regulatory Treatment of the Sale or Exchange of Decentralized Virtual Currency under the Federal Bank Secrecy Act and the District of Columbia Money Transmitters Act of 2000 |
| **Date:** | January 16, 2015 |

## Background:

The D.C. Department of Insurance, Securities and Banking ("Department") has received an increasing number of inquiries regarding the Department's legal and policy position as it relates to licensing companies that sell or exchange decentralized virtual currency in the District of Columbia. Virtual currency is an electronic medium of exchange not created or adopted by a government. As a result, virtual currencies exist outside of a centralized, established financial system.

Decentralized virtual currencies have no central repository, no intrinsic set value, no single administrator and can be created through the computing efforts of any individual. The most common type of decentralized virtual currency is Bitcoin, a cryptocurrency that manages the creation of new units through a process called "mining" where individuals receive Bitcoin by solving increasingly complicated calculations. Transfers of this cryptocurrency can be made



between individuals without any intermediary. However, decentralized virtual currencies can also be traded on third party exchanges.

The Department has received inquiries as it relates to two different business models involving decentralized virtual currency: two party sales of virtual currency and three party transactions involving an intermediary. The two party business model involves companies that have already purchased virtual currency, or acquired it through mining, and wish to sell or exchange it for real currency or another type of virtual currency. These inquiries have involved a desire to conduct this business either online or through ATM machines that accept real currency in exchange for virtual currency. On the other hand, the three party business model involves selling or exchanging virtual currency through the use of an intermediary. These inquiries often describe these businesses as an escrow service for the sale of virtual currency or a virtual currency exchange.

This memorandum addresses whether two party and three party business models for the sale and exchange of decentralized virtual currency require registration or licensing under the Federal Bank Secrecy Act, 31 U.S.C. §§ 5311—5314e, and the District of Columbia Money Transmitters Act of 2000, codified at D.C. Official Code §§ 26-1001—1027 (2012). The guidance in this memorandum does not apply to centralized virtual currencies, which have an administrator that acts as a centralized repository. These centralized virtual currency business models have many variations and will have to be addressed on a case by case basis.

**DISCUSSION – Bank Secrecy Act:**

The Bank Secrecy Act is administered by the Financial Crimes Enforcement Network ("FinCEN"), a bureau in the United States Department of the Treasury. See Treas. Order 180-01 (March 24, 2003). All money service businesses, including money transmission and currency exchange businesses, are required to register with FinCEN, file currency transaction and suspicious activity reports, and develop and implement an anti-money laundering compliance program. FinCEN's regulations define the term "money transmitter" as follows:

> **(5) *Money transmitter*—(i) *In general.***
> **(A)** A person that provides money transmission services. The term "money transmission services" means the acceptance of currency, funds, or other value that substitutes for currency from one

> person *and* the transmission of currency, funds, or other value that substitutes for currency to another location or person by any means. "Any means" includes, but is not limited to, through a financial agency or institution; a Federal Reserve Bank or other facility of one or more Federal Reserve Banks, the Board of Governors of the Federal Reserve System, or both; an electronic funds transfer network; or an informal value transfer system; or
>
> **(B)** Any other person engaged in the transfer of funds.

31 C.F.R. § 1010.100 (ff)(5)(i)(A) & (B) (2014). Moreover, FinCEN regulations define a dealer of currency exchange as:

> A person that accepts the currency, or other monetary instruments, funds, or other instruments denominated in the currency, of one or more countries in exchange for the currency, or other monetary instruments, funds, or other instruments denominated in the currency, of one or more other countries in an amount greater than $1,000 for any other person on any day in one or more transactions, whether or not for same-day delivery.

31 C.F.R § 1010.100 (ff)(1). Because District law is silent on how virtual currencies should be treated, in the absence of commentary from the D.C. Council, FinCEN guidance is most instructive on how the District should regulate transactions involving virtual currencies.

On March 18, 2013, FinCEN issued guidance on virtual currency where it decided not to draw a distinction between virtual currency and real currency for purposes of money transmission. See U.S. Dep't of the Treasury, FinCEN, Guidance FIN-2013-G001: *Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies* (Mar. 18, 2013), *available at* http://fincen.gov/statutes_regs/guidance/pdf/FIN-2013-G001.pdf ("Guidance"). In the Guidance FinCEN noted that "[a]ccepting and transmitting anything of value that substitutes for currency makes a person a money transmitter under the regulations implementing the BSA." Id. at 3. However, because the definition of currency exchange requires the exchange of the currency of two countries the guidance indicated that "a person who accepts real currency in exchange for virtual currency, or *vice versa*, is not a dealer in foreign exchange under FinCEN's regulations." Id. at 5-6.

Based on the BSA and FinCEN's regulations and Guidance, a company engaged in the two party virtual currency business model would not be required to register with FinCEN as a

currency exchange dealer because the company is not exchanging the currency of a country. *Id.* However, the two party business model would require registration with FinCEN as a money transmitter because the guidance states that "a person that creates units of convertible virtual currency and sells those units to another person for real currency or its equivalent is engaged in transmission to another location." On the other hand, according to the Guidance, a person participating in the three party virtual currency business model could be classified as an exchanger and a money transmitter if the person accepts "virtual currency from one person and transmits it to another person as part of the acceptance and transfer of currency, funds, or other value that substitutes for currency." *Id.*

## DISCUSSION – DC Money Transmitters Act:

The District of Columbia does not currently have a law requiring a license for companies engaged in the business of currency exchange. However, the District of Columbia Money Transmitters Act requires a person to be licensed to engage in the business of money transmission. See D.C. Official Code § 26-1002 (a) (2012). According to the Act, money transmission means:

> the sale or issuance of payment instruments or engaging in the business of receiving money for transmission or transmitting money within the United States, or to locations abroad, by any and all means, including but not limited to payment instrument, wire, facsimile, or electronic transfer.

D.C. Official Code § 26-1001 (10) (2001). The Act does not include a definition of "money" but Black's Law Dictionary defines "money" as the "medium of exchange authorized or adopted by a government as part of its currency." BLACK'S LAW DICTIONARY (9th ed. 2009) *available at* WestlawNext. In addition, the Internal Revenue Service has decided to treat decentralized virtual currency as property and not like currency. I.R.S. Notice 2014-21, 2014-21 I.R.B.938. In the absence of further clarity from the D.C. Council, and in light of the I.R.S.'s guidance and the common legal definition of money, the Department has decided not to treat virtual currency as "money" for purposes of money transmission.

Based on the Act and the Department's policy, the two party virtual currency business model would not require a license because it does not involve the transfer of a medium of

exchange adopted by a government. However, the three party virtual currency business model would require a license because it requires a party to receive money, that is, real currency, in order to purchase the virtual currency, that is later transferred to a third party through the use of an intermediary. This model is similar to how E-Bay purchases are facilitated by PayPal, which is currently required to be licensed in the District of Columbia. As a result, the intermediary receiving the real currency for transmission to facilitate the purchase of the virtual currency pursuant to a three party virtual currency business model would require a license under the Act.

**CONCLUSION:**

Based on the BSA and FinCEN's regulation and Guidance, a company engaged in the two party virtual currency business model would not be required to register with FinCEN as a currency exchange dealer because the company is not exchanging the currency of a country. However, the two party business model would require registration with FinCEN as a money transmitter because the guidance holds that "a person that creates units of convertible virtual currency and sells those units to another person for real currency or its equivalent is engaged in transmission to another location." On the other hand, according to the guidance, the three party virtual currency business model is an exchanger and a money transmitter if the person accepts "virtual currency from one person and transmits it to another person as part of the acceptance and transfer of currency, funds, or other value that substitutes for currency."

The District of Columbia does not currently have a law requiring a license for companies engaged in the business of currency exchange. However, based on the Act and the policy of the Department, the two party virtual currency business model also does not require a license because it does not involve the transfer of a medium of exchange adopted by a government. On the other hand, the three party virtual currency business model would require a license under the Act because it requires the receipt of real currency to purchase the virtual currency that is later transferred to a third party through the use of an intermediary.

**Parker, Charlotte (DISB)**

| | |
|---|---|
| **From:** | Hicks, Tiwana (DISB) |
| **Sent:** | Thursday, June 02, 2016 5:03 PM |
| **To:** | Parker, Charlotte (DISB) |
| **Cc:** | Weaver, Christopher (DISB); Rouse, Brian (DISB); Moore, Terry (DISB) |
| **Subject:** | RE: COEPTIS/Global Standard System (gold backed digital currency) |
| **Attachments:** | Virtual Currency and DC Money Transmitters Act Memo.docx |

Hello Charlotte,

We have concluded that CMO, Inc., d/b/a COEPTIS ("COEPTIS"), does not require a money transmitter license pursuant to the District of Columbia Money Transmitters Act (the "Act"). Our position is based on the legal guidance provided in the attached memorandum.

COEPTIS is engaged in a two party business model that does not involve the transfer of "money" or "a medium of exchange authorized or adopted by a government as part of its currency." COEPTIS states definitively that "national currency is neither received, dispersed or used on the Global Standard Platform." The Settlement Platform only facilitates the electronic movement of AUG. All exchange transactions involving *national currency for AUG* are conducted by financial institutions outside of the Settlement Platform. Based on the Act, a money transmitter license is not required because the transactions as described do not involve the transmission of "money."

Please let us know if you have any additional questions. Thank you.

Tiwana

Tiwana Hicks, Esq.
Licensing Manager
D.C. Department of Insurance, Securities and Banking
810 First Street NE, Suite 701
Washington, DC 20002
Office: (202) 442-7821
Fax: (202) 535-1194



EXHIBIT C