IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 1:19-cr-00395 |
| | § | |
| LARRY DEAN HARMON | § | |

## MOTION TO DISMISS PORTIONS OF COUNTS TWO AND COUNT THREE AS VOID FOR VAGUENESS

TO THE HONORABLE CHIEF JUDGE BERYL HOWELL:

NOW COMES Larry Harmon, by and through his attorney, Charles Flood, and moves this Court to dismiss Count Two (a) and (b) and Count Three as void for vagueness, saying for cause as follows:

**Introduction:**

In 2014 Larry Harmon began operating Grams and later HELIX.  Harmon never set out to break the law and if he had known in 2014 that operating a bitcoin tumbler was illegal, he never would have done it.  In 2017 when Larry Harmon learned that another tumbler was being investigated, he shut down HELIX and Grams.  But until then, Larry Harmon believed that he was not breaking the law because the laws he now stands accused of breaking failed to provide him fair warning of the conduct the government insists they proscribe.  As the disagreement between this Court and the District of Columbia's Department of Insurance and Banking shows, whether bitcoin tumbling was "money transmitting" between 2014 and 2017 is a matter of confusion to Courts, law enforcement and citizens.  During that time, both the federal and District of Columbia statutes in

question were so vague that individuals of common intelligence would have to guess as to whether their conduct was proscribed.

**The Indictment:**

As it relates to this Motion, Count Two charges defendant with operating an unlicensed money transmission business in violation of 18 U.S.C. § 1960(a). The violation of § 1960(a) in Count Two is alleged in the three separate manner and means contained in § 1960(b). It alleges that Harmon conducted an unlicensed money transmitting business as defined by United States Code and that business: a) operated without obtaining a D.C. money transmitter license; b) failed to register as a money transmitter pursuant to United States Code; and c) otherwise involved the transmission of funds known to Harmon to be derived from a criminal offense. This Motion, like the previous Motion to Dismiss [Doc. 31] does not address the third manner and means of Count Two.

Count Three alleges that defendant engaged in the business of money transmission without a license as required by the District of Columbia Money Transmitter Act ("MTA")(D.C. Code § 26-1023(c)). The alleged facts and law underlying the charges in this case have been detailed extensively by this Court in prior Orders [Docs 59 and 82] and will not be repeated here except this brief recitation necessary for this Motion. This case involves convertible virtual currency (CVC) and is a novel prosecution of a pure CVC-to-CVC "swap." As alleged, Harmon operated a bitcoin tumbler service. This service was a software program that swapped a user of the software's bitcoin with different bitcoin for a fee. The transactions alleged in the indictment occur solely on the decentralized ledger of bitcoin activity. It is not alleged that there is ever a physical transferal of any national

2

currency or that any CVC is ever exchanged for any national currency or fiat as part of the charged conduct. There has never been a prosecution based on the activities alleged. The question raised by this Motion is whether between 2014 and 2017, a reasonable person would have known that the act of bitcoin tumbling was money transmitting which required a license pursuant to the Bank Secrecy Act ("BSA"), 31 U.S.C. § 5311 *et seq.* and the District of Columbia Money Transmitters Act, D.C. Code § 26-1023.  Based on a review of the facts and the law, the answer is no.  No reasonable person would have known that from 2014 to 2017 operation of a bitcoin tumbler would potentially violate the law.

**Law and Argument:**

The Due Process Clause protects defendants from being convicted for conduct they were not fairly warned was unlawful.  See *United States v. Lanier*, 520 U.S. 259, 266 (1997); *Bouie v. City of Columbia*, 378 U.S. 347, 350-51 (1964). The Constitution's requirement of "fair warning" consists of three related protections: (1) a statute is void for vagueness where "it forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application"; (2) "the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered"; and (3) "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Lanier*, 520 U.S. at 266.

"No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands

3

or forbids*.*" *Bouie v. City of Columbia*, 378 U.S. 347, 351, 84 S.Ct. 1697, 1701, 12 L.Ed. 894 (1964) (internal quotation omitted). For its part, the void for vagueness "doctrine guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018). "A statute authorizes an impermissible degree of enforcement discretion—and is therefore void for vagueness— where it fails to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent arbitrary and discriminatory enforcement. *Act Now to Stop War & End Racism Coal. & Muslim Am. Soc'y Freedom Found. v. D.C.*, 846 F.3d 391, 410 (D.C. Cir. 2017). The doctrine helps ensure that individuals like Mr. Harmon can correctly choose between lawful and unlawful conduct, requiring that laws give the person of ordinary intelligence a reasonable opportunity to understand what is prohibited, so that he may adjust his conduct accordingly. *Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972). Here that doctrine bars Mr. Harmon's prosecution to the extent it is based on his failure to comply with federal registration requirements or D.C.'s licensing requirements.

From prior to 2014 to the end of 2017 neither Congress nor the D.C. Council had enacted legislation specifically governing the operation of a bitcoin tumbler. As such, even in late 2017 when the conduct is alleged to have ended there was no statement from any branch of federal or district law that a bitcoin-to-bitcoin transaction would violate the law. While this Court has previously held that a pure bitcoin-to-bitcoin transaction is a money transmission, there was no prior indication to the public to this effect.

While the Government will no-doubt point out that there have been previous prosecutions regarding CVC's for money laundering and engaging in money transmission without a license, this is the first such prosecution that does not in any way involve national currency or fiat. It was not until 2019 that the Treasury Department, through the Financial Crimes Enforcement Network (FinCEN) gave any guidance regarding whether a tumbler was a money transmitter subject to their regulation. (See FIN-2019-G001, Application of FinCEN's Regulations to Certain Business Models Involving Convertible Virtual Currencies, May 9, 2019). In that guidance, FinCEN for the first time, indicated that operating a bitcoin tumbler could violate federal law. The regulatory confusion is not limited to FinCEN. Even now there is overlapping regulation and confusion between the Commodity Futures Trading Commission, the Internal Revenue Service, the Securities and Exchange Commission and other government entities on how to classify and regulate CVCs. Obviously, the regulations regarding bitcoin tumbling qualifying as money transmitting business could not have been sufficiently clear between 2014 and 2017 if the government needed to clarify them in 2019. The vagueness of the statute is proven by the explanation of its scope.

Similarly, while this Court's analysis of the D.C. MTA clearly holds that bitcoin is money for purposes of the statute, there was no guidance to that effect during the alleged behavior. Indeed, as the Court is aware, attorneys for the District's Department of Insurance and Banking believed during that time (and may still today) that bitcoin was not money pursuant to the MTA. The disagreement between the DISB and this Court is evidence of the vagueness of the MTA. It cannot be said that either of the statutes in

5

question is definite and precise when years later attorneys and Courts are still unclear whether they apply to the alleged activity. This Court's conclusion that bitcoin is money for purposes of the MTA is a novel construction of the statute and there was no notice to Harmon or the public that a bitcoin-to-bitcoin transaction could invoke the MTA. As the MTA and the BSA are vague as applied to Defendant's alleged conduct, prosecution is barred by the due process clause of the Constitution.

**Conclusion:**

For the foregoing reasons, the defendant respectfully request that this Court dismiss Count Two (a) and (b) and Count Three of the indictment as being void for vagueness.

Respectfully submitted,

*/s/ Charles Flood*
Charles Flood
Flood & Flood Law Office
914 Preston at Main, Suite 800
Houston, TX 77002
(713) 223-8877; Fax (713) 223-8877
Email: *charles@floodandflood.com*
Texas Bar License# 00798178
Fed I.D. 22508
**COUNSEL FOR LARRY HARMON**

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Charles Flood*
Charles Flood
