UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No. 19-cr-395 (BAH) |
| : | |
| LARRY DEAN HARMON, : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PORTIONS OF COUNT TWO AND COUNT THREE AS VOID FOR VAGUENESS

The United States of America respectfully submits this response in opposition to Defendant's Motion to Dismiss Portions of Count Two and Count Three as Void for Vagueness, ECF No. 83.

### INTRODUCTION

The defendant asks this Court to declare that both the Bank Secrecy Act ("BSA") and the D.C. Money Transmitters Act ("MTA") are unconstitutional as applied in this case on the ground that they are "void for vagueness." But the defendant does not specify what statutory language he is challenging as vague. Instead, the government and this Court must guess at the basis for the defendant's motion.

In any event, there is nothing in the defendant's motion to justify the sweeping constitutional ruling he seeks. The defendant's argument seems to be that if the Court has to use any interpretative tools in construing a statute, or if there is any disagreement about a particular application of a statute, the statute is necessarily unconstitutional. That is not the law. As explained below, the defendant's challenge here is foreclosed by binding D.C. Circuit precedent and this Court's exhaustive consideration of the BSA and the MTA in its prior rulings in this case.

## STANDARD OF REVIEW

The Due Process Clause of the 5th and 14th Amendments prohibits the government from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. V; *see also* U.S. Const. amend. XIV. An outgrowth of the Due Process Clause, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015).[1]

The void for vagueness doctrine is narrow. The challenger must overcome a strong presumption that duly enacted statutes are constitutional. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963) ("The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language."); Norman Singer, *et al.*, 1A Sutherland Statutory Construction § 21:16 (7th ed. Nov. 2020 update) ("A person challenging a statute as void for vagueness has a weighty burden of proof and must overcome the strong presumption of constitutionality.").

Accordingly, the void for vagueness doctrine "does not invalidate every statute which a reviewing court believes could have been drafted with greater precision." *Rose v. Locke*, 423 U.S. 48, 49, (1975) (per curiam). Rather, a statute is unconstitutionally vague only if it "proscribe[s] no comprehensible course of conduct at all." *United States v. Powell*, 423 U.S. 87, 92 (1975). "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the

---

[1] The defendant does not articulate any arguments about enforcement discretion, so the government will focus solely on the "notice" prong of vagueness doctrine. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010).

2

indeterminacy of precisely what that fact is." *United States v. Williams*, 553 U.S. 285, 306 (2008). This Court has recognized a high bar for rendering a statute unconstitutionally vague, advising:

> [N]o void for vagueness challenge is successful merely because a statute requires a person to conform his conduct to an imprecise but comprehensible normative standard, whose satisfaction may vary depending upon whom you ask. Instead, unconstitutional vagueness arises only if the statute specifies no standard of conduct at all.

*United States v. Gonzalez*, No. 20-cr-40 (BAH), 2020 WL 6342948, at *7 (D.D.C. Oct. 29, 2020) (internal citations and quotation marks omitted).

The D.C. Circuit's decision in *United States v. Bronstein*, 849 F.3d 1101 (D.C. Cir. 2017), well illustrates the distinction between laws that require some degree of interpretation and laws that are unconstitutionally vague. In *Bronstein*, the defendants were prosecuted for disturbing a Supreme Court argument under a law that prohibited, among other things, making a "harangue" or "oration" within the Supreme Court building. *Id.* at 1104 (citing 40 U.S.C. § 6134). The district court held that those terms were unconstitutionally vague, but the D.C. Circuit reversed. *Id.*

As the D.C. Circuit explained, vagueness is not evaluated in a vacuum. Instead, courts are required to exhaust all the available tools for statutory interpretation before declaring a statute void for vagueness. "The vagueness analysis . . . turns on the tools of statutory interpretation." 849 F.3d at 1104. A law is not vague merely because it requires some interpretation, for "[e]ven trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid." *Id.* at 33 (quoting *Rose v. Locke*, 423 U.S. 48, 50 (1975)). Rather, "a statute is unconstitutionally vague if, *applying the rules for interpreting legal texts*, its meaning 'specifie[s]' 'no standard of conduct . . . at all.'" *Id.* at 1107 (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, (1971)) (emphasis added); *see also*

3

*id.* at 1106 ("'Only if no construction can save the Act from this claim of unconstitutionality are we willing to' strike the statute.") (quoting *Screws v. United States*, 325 U.S. 91, 98 (1945)).

Thus, the challenge in *Bronstein* failed because the disputed statutory terms, "harangue" and "oration," could easily be construed using ordinary tools of statutory construction. The panel in *Bronstein* consulted dictionary definitions, 849 F.3d at 1108; the statutory context of surrounding terms, *id.* at 1108; the title of the relevant statutory section, *id.* at 1109; and the apparent purposes of the statute, *id.* at 1109-10, in construing the disputed language. Because the panel could discern a "core meaning" to the disputed terms by "[e]mploying the tools of statutory interpretation"—and because that core meaning "proscribes determinable conduct"—the statute was not unconstitutionally vague. *Id.* at 1104.

The same principles apply here and compel denial of the defendant's void-for-vagueness challenge.

## ARGUMENT

### A. The D.C. Money Transmitters Act Is Not Void for Vagueness

#### 1. The Court's Exhaustive Construction of the MTA Shows It Is Not Vague

The defendant's vagueness challenge to the MTA is foreclosed by this Court's exhaustive construction of the term "money" in its prior rulings. *See* ECF No. 59, at 14-33 (July 24, 2020 Mem. Op.); ECF No. 82 (Dec. 24, 2020 Mem. Op.). In its July 24, 2020 ruling, the Court held that the statutory term "money" includes bitcoin—and that the MTA covers bitcoin-based money transmitter businesses such as Helix—after considering, among other things, the MTA's statutory text, dictionary definitions of the term "money," the way bitcoin is used as "medium of exchange, method of payment, and store of value," analogous federal case law, the relationship between the MTA and other provisions of the D.C. Code, the "purposes and objects" of the MTA, and the

4

legislative history of the MTA.  *See* ECF No. 59, at 14-33.  Thus, here, as in *Bronstein*, there is no unconstitutional vagueness where the Court was able to discern the meaning of the term "money" based on its plain meaning and ordinary tools of statutory construction.

Indeed, even setting aside the Court's thorough analysis, the plain text of the MTA would have provided "fair notice" of the statute's application to virtual currencies like bitcoin.  The D.C. Code broadly defines "money transmission" as "the sale or issuance of payment instruments or engaging in the business of receiving money for transmission or transmitting money within the United States, or to locations abroad, by any and all means, including but not limited to payment instrument, wire, facsimile, or electronic transfer."  D.C. Code § 26-1001(10).  An ordinary person reading the MTA would immediately note the statute's intended breadth, given the reference to transmission "by any and all means."  An ordinary person considering whether transmitting virtual currency—a form of value operating as a substitute for traditional currency—constituted "money transmission" would not struggle to determine that the answer was, clearly, yes.  And, as this Court has already held, "the MTA adopts the ordinary definition of money," and that ordinary definition "encompasses bitcoin."  ECF No. 59, at 32.  "[T]he unambiguous meaning of the term 'money' under the MTA encompasses virtual currency, including bitcoin, and applied to defendant at the time he allegedly operated Helix without a money transmitting license."  ECF No. 82, at 29.

**2. The Court's Rejection of the Rule of Lenity Shows the MTA Is Not Vague**

In addition, the MTA can hardly be considered unconstitutionally vague when this Court has twice ruled that it is not even ambiguous enough to trigger the Rule of Lenity.  Vagueness and the Rule of Lenity are closely related.  *See United States v. Lanier*, 520 U.S. 259, 266 (1997) (describing lenity as "a sort of 'junior version of the vagueness doctrine.'") (quoting H. Packer, *The Limits of the Criminal Sanction* 95 (1968)); *see also Sash v. Zenk*, 439 F.3d 61, 65 (2d Cir.

5

2006) (noting that "the vagueness doctrine is 'related' to the rule of lenity and the *ex post facto* doctrine, because all concern fair notice"). But while lenity requires courts to choose between two plausible readings of a statute (after exhausting all other tools of statutory interpretation), vagueness doctrine applies only if courts can discern *no* sensible reading of the statute at all. The defendant fails to explain how a statute that is insufficiently ambiguous to trigger the Rule of Lenity is nonetheless so vague that it must be struck down as unconstitutional.

Accordingly, the same analysis that the Court relied upon in rejecting the defendant's lenity challenge applies *a fortiori* to his vagueness challenge. In July, this Court held that "the rule of lenity does not apply" because the "rule is triggered only when 'a reasonable doubt persists about a statute's intended scope even *after* resort to'" other standard tools of statutory interpretation. ECF No. 59, at 31-32 (citing *Moskal v. United States*, 498 U.S. 103 (1990) and *Parol Comm'n v. Noble*, 693 A.2d 1084, 1103–04 (D.C. 1997)). The Court confirmed that analysis in its December ruling denying the defendant's motion for reconsideration, explaining that "typical interpretive tools, namely '[t]he MTA's language, structure and legislative history,' all 'point[ed] to the conclusion that' the statute covers bitcoin as 'money.'" ECF No. 82, at 28 (quoting ECF No. 59, at 32). If the MTA's text is not sufficiently ambiguous to invoke the Rule of Lenity, it is certainly not so inscrutable as to be unconstitutionally vague.

### 3. The Existence of the Non-Public DISB Opinion Letter Does Not Establish Vagueness

The defendant argues (at 5) that the MTA is unconstitutionally vague because of the "disagreement" between this Court's rulings and the non-public 2015 opinion letter from the D.C. Department of Insurance, Securities and Banking ("DISB"). However, a statutory term is not rendered unconstitutionally vague merely because it "'do[es] not mean the same thing to all people, all the time, everywhere.'" *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S.

6

476, 491 (1957)). To hold otherwise would mean that any time two lawyers or judges have a good-faith disagreement about the meaning of a word in a statute, the statute is unconstitutional. That is clearly not the law. Just as "[t]he rule of lenity . . . is not applicable 'merely because it was possible to articulate' the term 'money' 'more narrow[ly],' as the defendant urges," ECF No. 82 (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)), the void for vagueness doctrine does not apply merely because a narrower reading might have been possible.

## B. The Bank Secrecy Act Is Not Vague

### 1. The Plain Language of the Federal Registration Requirement Provides Fair Notice

The defendant also raises a vagueness challenge to the BSA, but—as noted at the outset of this response—it is almost impossible for the government to respond without knowing what statutory text the defendant claims is unconstitutionally vague.[2] Nevertheless, the plain language of 18 U.S.C. § 1960's federal registration prong and the related BSA regulations provide fair notice of the criminality of the defendant's conduct.[3]

---

[2] The defendant cannot strategically wait until his Reply to identify the statutory text he is challenging. *See N.Y. Rehabilitation Care Mgmt., LLC v. NLRB*, 506 F.3d 1070, 1076 (D.C. Cir. 2007) (arguments raised for the first time on reply are waived "in order to prevent the 'sandbagging' of another party").

[3] Count Two charges violations of all three prongs of § 1960(b)(1). The defendant's vagueness challenge only challenges the first two prongs: the state licensing prong, § 1960(b)(1)(A), alleging violation of the MTA; and the federal registration prong, § 1960(b)(1)(B), alleging violation of the federal registration requirements under the BSA. The defendant explicitly excludes the third prong of § 1960, the "illegal funds" prong under § 1960(b)(1)(C), from his argument. *See* ECF No. 83, at 1 (challenging only "Count Two (a) and (b) and Count Three" in the Indictment). All three prongs, including the unchallenged "illegal funds" prong, criminalize operation of an "unlicensed money transmitting business" as defined in § 1960(b)(1), which incorporates the definition of "money transmitting" in § 1960(b)(2). It thus seems that the defendant (correctly) recognizes that the terms "unlicensed money transmitting business" and "money transmitting" within § 1960 are not unconstitutionally vague. However, it is unclear how the defendant squares this concession with his (apparent) argument that "money transmitting business" is unconstitutionally vague when it appears within the context of the BSA. As this Court has observed, "[w]hile Section 1960 contains its own definition of 'money transmitting,' *see* 18 U.S.C. § 1960(b)(2), which is separate from the definition of 'money transmitting business' in 31 U.S.C. § 5330, courts generally construe the two definitions as substantively the same." ECF No. 59, citing *E-Gold*, 550 F. Supp. 2d at 92 n.10., *U.S. v. Mazza-Alaluf*, 621 F.3d 205 (2d Cir. 2010). The BSA licensing regime for money transmitters cannot be unconstitutionally vague while the federal statute criminalizing the operation of a money transmitter without a license pursuant to the BSA is not.

7

The federal registration prong of Section 1960, 18 U.S.C. § 1960(b)(1)(B), criminalizes the failure to comply with money transmitting business registration requirements in either the statutory text of the BSA or its implementing regulations. In relevant part, the statutory text of the BSA defines a "money transmitting business" subject to federal registration as:

> (1) Money transmitting business. —The term "money transmitting business" means any business other than the United States Postal Service which—
>
> (A) provides check cashing, currency exchange, or money transmitting or remittance services, or issues or redeems money orders, travelers' checks, and other similar instruments or *any other person who engages as a business in the transmission of funds*, including any person who engages as a business in an *informal money transfer system* or any network of people who engage as a business in *facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system*;

31 U.S.C. § 5330(d)(1)(A) (emphases added).[4]

As with the MTA, an ordinary person reading § 5330 would have recognized the statute's intended breadth and been on notice of the kinds of conduct potentially covered by it. For example, the statutory definition applies to "any other person who engages as a business in the transmission of funds." *Id.* The operative words—"person," "business," "transmission," "funds"—all have simple, ordinary meanings that clearly apply to a person like the defendant, who was engaged in the business of transmitting bitcoin, which counts as a type of "funds," through his Helix bitcoin mixer. Indeed, the defendant has repeatedly confirmed through counsel that he understands the term "funds" to include bitcoin. *See* ECF No. 66, 7/15/20 Hr'g Tr., at 7:22-23 (Defense counsel:

---

[4] Section 5330(d)(1)(A) was amended as part of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. Law 116-283, 134 Stat. 3388 (Jan. 1, 2021) (the "NDAA"), replacing the phrase "funds" with "currency, funds, or value that substitutes for currency." *Id.* § 6102, at *4553. These additions do not evidence any concession that the original term—"funds"—was vague, as "funds" remains a core part of the definition. If anything, the NDAA amendments show congressional ratification of the well-developed case law holding that "funds" includes bitcoin and other virtual currencies. *See Helsinn Healthcare S.A. v. Teva Pharmaceuticals USA, Inc.*, 139 S. Ct. 628, 634 (2019) ("'In adopting the language used in the earlier act, Congress 'must be considered to have adopted also the construction given by this Court to such language, and made it a part of the enactment.'") (quoting *Shapiro v. United States*, 335 U.S. 1, 16 (1948)).

"We concede that Bitcoin is funds within the meaning of the relevant statutes."); ECF No. 49, at 7 ("Mr. Harmon's argument does not depend on the argument that bitcoins are not 'funds' under § 5330. We agree that argument is foreclosed, and we have never made it.").

The implementing regulations are similarly clear. Federal regulations define "Money transmitter" as follows:

(5) Money transmitter—

(i) In general.

    (A) A person that provides money transmission services. The term "money transmission services" means the acceptance of currency, funds, or other value that substitutes for currency from one person and the transmission of currency, funds, or other value that substitutes for currency to another location or person by any means. "Any means" includes, but is not limited to, through a financial agency or institution; a Federal Reserve Bank or other facility of one or more Federal Reserve Banks, the Board of Governors of the Federal Reserve System, or both; an electronic funds transfer network; or an informal value transfer system; or

    (B) Any other person engaged in the transfer of funds.

31 C.F.R. § 1010.100(ff)(5).

These regulations also provide sufficient notice of the kinds of conduct that they cover. Notably, subsection (B) closely tracks the statutory definition from § 5330(d)(1)(A), using ordinary words like "person," "transfer," and "funds." These terms are no more vague here than they are in the statutory definition discussed above. Subsection (A)—which was the focus of the defendant's initial Motion To Dismiss Counts 2-3, ECF No. 31, at 4-6—applies to the transfer of funds "to another location or person by any means." The defendant cannot seriously be arguing that the word "person" is unconstitutionally vague, or that his Helix mixer did not transfer funds from one "person" to another. As this Court held, the Indictment adequately alleged that Helix could be used to send bitcoin "from a customer's account hosted by [a] Darknet market to another

9

account not controlled by that market," which qualifies as "transmission between parties."[5] And, to the extent the defendant is now arguing that the term "location" is unconstitutionally vague, that is rebutted by this Court's careful analysis of the meaning of the term "location" as applied to the Helix bitcoin mixer. As this Court held, transferring bitcoin means "transmission to a new location on the blockchain hosted by a different entity," much the same as a transfer from one bank account to another. *See* ECF No. 58-59. The defendant may disagree about how to interpret the term "location," but mere disagreement does not justify voiding the term as unconstitutionally vague.[6]

### 2. The Absence of Specific Guidance for Every Application of a Statute Does Not Establish Vagueness

The defendant's arguments focus (at 4-5) on the absence of regulatory guidance concentrated specifically on mixers or bitcoin-to-bitcoin transactions. As a preliminary matter, the defendant's arguments are self-contradictory. In the same paragraph, the defendant argues that the *absence* of specific guidance pertaining to bitcoin-to-bitcoin transactions prior to 2019 is evidence of vagueness; and that the *issuance* of such guidance by the Financial Crimes Enforcement Network ("FinCEN") in 2019 is *also* evidence of vagueness, because "[t]he vagueness of the statute is proven by the explanation of its scope." ECF No. 83, at 5. This is illogical nonsense.[7]

---

[5] The Dictionary Act defines the term "person" to "include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1.

[6] To the extent the defendant is now claiming that terms like "location" are unconstitutionally vague, that would contradict the position he previously advocated before this Court. In the defendant's original motion to dismiss, he argued that the term "location" had a definite, narrow meaning that was limited to physical locations like countries on a map. *See, e.g.*, ECF No. 49, at 7-8. The same word can hardly have a definite meaning and also be unconstitutionally vague.

[7] The defendant also ignores the regulatory guidance document issued by FinCEN in 2013, well *before* the defendant began operating Helix. *See* Dep't of the Treasury FinCEN Guidance, *Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies*, FIN-2013-G001 (Mar. 18, 2013), https://www.fincen.gov/resources/statutes-regulations/guidance/application-fincens-regulations-persons-administering (the "2013 FinCEN Guidance"). As this Court has previously observed, the 2013 FinCEN guidance issued explicitly "*declined* to distinguish "between virtual currency and real currency," [and] deemed "transmitting *anything of value* that substitutes for currency" to qualify as money transmission under the BSA." ECF No 82, at 24

10

The defendant's arguments simply misconstrue the standard for determining whether a statute is unconstitutionally vague. "Regulations need not . . . achieve 'meticulous specificity,' which would come at the cost of 'flexibility and reasonable breadth.'" *Betancourt v. Bloomberg*, 448 F.3d 547, 552 (2d Cir. 2006) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)). "Due process does not require 'impossible standards' of clarity." *Kolender v. Lawson*, 461 U.S. 352, 361 (1983). Indeed, courts "are not concerned with vagueness in the sense that the term 'requires a person to conform his conduct to an imprecise but comprehensible normative standard,' whose satisfaction may vary depending upon whom you ask." *Bronstein*, 849 F.3d at 1107 (quoting *Coates*, 402 U.S. at 614). The D.C. Circuit has recognized that "'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'" *Id.* at 1108 (*quoting Johnson*, 576 U.S. at 604); *see also Johnson*, 576 U.S. at 601 ("even clear laws produce close cases"). Here, the relevant portions of the MTA and BSA were sufficiently clear and broad in their scope that an ordinary person would have had fair notice that a bitcoin mixer such as Helix falls within their scope. Nothing further was required.

### C. Consistency With Other Courts Weighs Against Void for Vagueness Claim

In evaluating a vagueness claim, the court must "consider not only the text of the statute, but also any judicial constructions." *Copeland v. Vance*, 893 F.3d 101, 115 (2d Cir. 2018); *accord Bronstein*, 849 F.3d at 1107. Even if the applicability of the MTA or the BSA to the Helix business

---

(emphasis in original) (quoting 2013 FinCEN Guidance). In any event, the FinCEN guidance documents are just that—guidance. The applicable legal rules are the MTA, BSA, and implementing regulations for the BSA—all of which were in operation long before 2014, and all of which encompassed money transmission involving bitcoin.

11

model were unclear based solely on the plain language of the statutes, "clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute." *Lanier*, 520 U.S. at 266.

The Court's prior holdings on the meaning of these statutes were not an anomaly, nor were they reached in a vacuum. Rather, the Court joined numerous other courts that have similarly analyzed the BSA and concluded that it covers virtual currency. Even by 2015 and 2016, "a number of courts had addressed the issue of whether virtual currency, including bitcoin, qualified as 'money' and had concluded affirmatively, consistent with this Court's holding in *Harmon*." ECF No. 82. *See, e.g.*, *United States v. Budovsky,* 2015 WL 5602853, at *13-15 (S.D.N.Y. Sep. 23, 2015) (finding bitcoin qualified as "funds" for purposes of 18 U.S.C. § 1960); *United States v. Faiella,* 39 F. Supp. 3d 544, 545 (S.D.N.Y. 2014) ("Bitcoin clearly qualifies as 'money' or 'funds' under these plain meaning definitions" for purposes of operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960); *United States v. Ulbricht*, 31 F. Supp. 3d 540, 570 (S.D.N.Y. 2014) ("One can money launder using Bitcoin."). In the subsequent years, those courts have in turn been joined by numerous others. *See, e.g.*, *United States v. Murgio*, 209 F. Supp. 3d 698, 707-10 (2d Cir. 2016) ("[T]he Court concludes that 'funds,' for the purposes of § 1960, means pecuniary resources, which are generally accepted as a medium of exchange or a means of payment. Applying that definition here, it is clear that bitcoins are funds within the plain meaning of that term. Bitcoins can be accepted as a payment for goods and services or bought directly from an exchange with a bank account.") (internal quotations and alterations omitted); *United States v. Mansy*, 2017 WL 9672554, at *1 (D. Me. May 11, 2017) (collecting cases and announcing that "[t]he Court . . . adopts the persuasive analysis of the majority of the district courts that have recently addressed this question"); *United States v. Stetkiw*, 2019 WL 417404, at *1-2 (E.D. Mich. Feb. 1, 2019) (collecting cases and concluding that "federal District Courts have repeatedly found

that Bitcoin constitutes 'money' and 'funds' within the meaning of 18 U.S.C. § 1960"); *United States v. Ologeanu*, 2020 WL 1676802, at *10-11 (E.D. Ky. Apr. 4, 2020) (collecting cases and concluding that "the federal district courts have unanimously and univocally concluded that Bitcoin constitutes 'money' and 'funds'") (internal quotations and alterations omitted); *but see United States v. Petix*, 2016 WL 7017919 (W.D.N.Y. Dec. 1, 2016) (Magistrate Judge Report and Recommendation, which was not adopted by district court). Such a remarkable degree of unanimity among courts is not necessary to reject a vagueness challenge, but when present, it is strong evidence that the relevant statutes are not unconstitutionally vague. *Cf. Johnson*, 576 U.S. at 598 (noting that "the failure of 'persistent efforts . . . to establish a standard' can provide evidence of vagueness") (quoting *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 91 (1921)).

### D. Applications of Law to "Novel" Fact Patterns Are Not Unconstitutionally Vague

The defendant suggests (at 6) that because this a "novel" prosecution, the defendant was not on notice as to the potential illegality. That the defendant took advantage of new technology to violate an existing statute—and that he is among the first to be identified and apprehended by law enforcement after doing so—does not shield the defendant from the statute's reach. "Due process requirements are not designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *Lanier*, 520 U.S. at 271 (internal citations and quotation marks omitted).

The defendant is correct that this is the first U.S. prosecution of a cryptocurrency mixer. However, this is not a product of any unconstitutional vagueness in the legal regime, or arbitrary enforcement of the law. Rather, bitcoin mixers are relatively new variations of the money transmitter business model, emerging only after the birth of bitcoin just over a decade ago and

growing in popularity as criminals looked to evade law enforcement's developing abilities to trace transactions on the blockchain. The operators of bitcoin mixers, fully aware of their illicit nature, intentionally operate in the shadows and go to great lengths to evade detection and apprehension by law enforcement—as the defendant did in this case. The resulting paucity of criminal enforcement as applied to this fact pattern is thus more a product of the clear facial illegality of the activity than any statutory vagueness.

As Judge Forrest in the Southern District of New York observed in denying another defendant's void for vagueness argument in the Silk Road Darknet market prosecution:

> It is certainly true that case law to date has not been applied to the type of conduct that forms the basis for the Government's charges—but that is not fatal. Throughout the history of the common law system there have been times when laws are applied to new scenarios. At each new stage there were undoubtedly those who questioned the flexibility of the law. But when the principles underlying a law are consistent and clear, they may accommodate new fact patterns. The fact that a particular defendant is the first to be prosecuted for novel conduct under a pre-existing statutory scheme does not *ipso facto* mean that the statute is ambiguous or vague or that he has been deprived of constitutionally appropriate notice.

*United States v. Ulbricht*, 31 F. Supp. 3d 540, 565-66 (S.D.N.Y. 2014). The same analysis holds true here.

### E. The Defendant Intended To Operate Helix as an Illegal Bitcoin Money Laundering Service

Finally, while a motion to dismiss is not a vehicle to resolve disputed issues of fact, the government disputes the defendant's absurd claim that he "never set out to break the law" and "if he had known in 2014 that operating a bitcoin tumbler was illegal, he never would have done it," ECF No. 83, at 1.

As the Indictment makes plain, the defendant operated Helix as a secret Darknet-based drug money laundering platform that enabled users to conduct more than $311 million in illicit transactions. The defendant bundled Helix with his Darknet search engine Grams, which allowed

users to search Darknet markets selling "illegal goods, like guns and drugs, and services, like hacking and money laundering." ECF No. 1, ¶ 2. The defendant "posted online that he believed the Darknet primarily sold drugs and illegal items." *Id.* The defendant explicitly marketed Helix, his bitcoin mixer, "to customers on the Darknet as a way to conceal transactions from law enforcement." *Id.* ¶ 5. The defendant partnered Helix with the notorious Darknet market Alphabay, as well as Agora Market, Nucleus, Dream Market, and other Darknet markets. *Id.* ¶ 6, 8.

Indeed, as the government intends to prove at trial, the defendant went to dramatic lengths to conceal his true identity and engaged in a sophisticated series of money laundering and fraud sub-schemes to move the proceeds he earned from operating Grams/Helix. If the defendant believed Helix to be a legitimate business, he would not have falsified invoices, submitted fraudulent documentation to financial institutions, converted the bitcoin proceeds to cash using straw sellers, enlisted associates to act as money mules to transmit the cash back to him, laundered the money through his bank accounts, and then filed false tax returns to legitimize the income. *See generally* ECF No. 73 (Gov't Rule 404(b) Mot.).

The defendant claims (at 1) that he shut down Helix in 2017 after he "learned that another tumbler was being investigated." This presumably refers to the shutdown of BestMixer, a cryptocurrency tumbler, shortly after law enforcement announced the seizure of the AlphaBay and Hansa Darknet marketplaces, both of which sent significant volumes of funds through Helix. The BestMixer operator released a statement insisting that his site had not been seized by law enforcement. Around the same time, BTC-e, a criminal virtual currency exchange at which the defendant held an account, was also shuttered by law enforcement in coordination with the unsealing of a criminal indictment and the announcement of a related civil enforcement action by

15

FinCEN. The timing of the defendant's decision to shut down Helix indicates not that he suddenly realized that the conduct was illegal, but rather that he recognized law enforcement was successfully identifying and prosecuting his Darknet criminal compatriots.

These facts—and more—highlight the deficiency of the defendant's void-for-vagueness challenge. The defendant was not some unwitting computer programmer whose crimes could have been avoided if only the statutory text of the MTA and the BSA were more precise. He was a seasoned Darknet administrator who deliberately designed, advertised, and operated a sophisticated money laundering service that enabled more than $311 million in illicit bitcoin transactions.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny Defendant's Motion To Dismiss Portions of Count Two and Count Three as Void for Vagueness.

.

>
> Respectfully submitted,
>
> MICHAEL R. SHERWIN
> ACTING UNITED STATES ATTORNEY
> New York Bar No. 4444188
>
> By:   /s/ *C. Alden Pelker*
> C. Alden Pelker, Maryland Bar
> Trial Attorney, U.S. Department of Justice
> 1301 New York Ave. N.W., Suite 600
> Washington, D.C. 20005
> Christopher B. Brown, D.C. Bar No. 1008763
> Assistant United States Attorney
> 555 4th Street, N.W.
> Washington, D.C. 20530
> Phone: (202) 616-5007 (Pelker)
> Fax: (202) 514-6113
> Catherine.Pelker@usdoj.gov
> *Counsel for the United States*