UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 19-cr-395 (BAH) |
| | : | |
| LARRY HARMON, | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S NOTICE AND MOTION IN LIMINE REGARDING
WILLFUL BLINDNESS INSTRUCTION AS TO COUNTS ONE AND TWO AND
PERMISSION TO REFER TO WILLFUL BLINDNESS IN OPENING STATEMENT

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, respectfully provides notice and moves this Court to find that a willful blindness jury instruction is appropriate for Counts One and Two, and to permit the government to refer to willful blindness in its opening statement when discussing these Counts. In support whereof, the government states as follows:

FACTUAL BACKGROUND

On December 3, 2019, a federal grand jury in the District of Columbia returned an indictment against the defendant, Larry Dean Harmon ("Harmon" or the "defendant"), on counts of Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h); Operating an Unlicensed Money Transmitting Business, in violation of 18 U.S.C. § 1960(a); and Money Transmission Without a License, in violation of D.C. CODE § 26-1023(c).

As summarized in the indictment and in pretrial briefing, the Indictment arises from Harmon's operation of a Darknet money laundering and money transmission service known as Helix from 2014 through 2017. Harmon began operating Helix in or about July 2014. For a fee, Helix would transfer its customers' bitcoin to designated recipients in a manner designed to

conceal and obfuscate the source or owner of the bitcoin.  This type of service is commonly referred to as a bitcoin "mixer" or "tumbler."  In or about August 2014, Harmon explained that Helix "uses new addresses for each transaction so there is no way LE would able [*sic*] to tell which addresses are helix addresses."  ECF No. 1 (Indictment), at 2.  Harmon operated Helix as a money laundering service integrated with his broader darknet search engine site, Grams, which operated from in or about April 2014 through December 2017.  Grams allowed users to search across multiple darknet markets for products listed by various vendors, particularly narcotics vendors.  Harmon had to visit the various marketplaces and write code and application programming interfaces (APIs) customized to each in order to enable this search platform.

In Count One, Harmon is charged with conspiring with co-conspirators known and unknown to commit various money laundering offenses—specifically, promotional money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i); and concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).  Both violations require proof that the defendant knew that the property being laundered constituted the proceeds of "some form of unlawful activity," 18 U.S.C. § 1956(a)(1).

In Count Two, Harmon is charged with operating an unlicensed money transmitting business, in violation of each of the three prongs of 18 U.S.C. § 1960(b)(1).  Under the third prong, Harmon is charged with operating a money transmitting business that "otherwise involves the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity."  18 U.S.C. § 1960(b)(1)(C).  Thus, this prong—to the extent it relies on transmission of funds "known . . . to have been derived from" criminal activity—also requires proof of the defendant's knowledge.

## ARGUMENT

I. **Willful Blindness Is Well-Established by Supreme Court and Other Judicial Precedent**

"The doctrine of willful blindness is well established in criminal law." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). "[I]n the federal courts, willful blindness instructions—sometimes called 'deliberate ignorance' or 'conscious avoidance' or 'ostrich' instructions—are now commonly given and commonly upheld." *United States v. Alston-Graves*, 435 F.3d 331, 338 (D.C. Cir. 2006) (collecting cases); *see also Global-Tech*, 563 U.S. at 768 (noting "long history of willful blindness and its wide acceptance in the Federal Judiciary").

A willful blindness jury instruction prevents defendants from "escap[ing] the reach of" statutes that require knowledge or willfulness as an element, "by deliberately shielding themselves from clear evidence of critical facts that are strongly suggested by the circumstances." *Global-Tech*, at 766; *see also United States v. Holloway*, 731 F.2d 378, 381 (6th Cir. 1984) (deliberate ignorance instruction "prevents a criminal defendant from escaping conviction merely by deliberately closing his eyes to the obvious risk that he is engaging in unlawful conduct."). "The traditional rationale for th[e] [willful blindness] doctrine is that defendants who behave in this manner are just as culpable as those who have actual knowledge." *Global-Tech*, at 766; *see also United States v. Gross*, 661 F. App'x 1007, 2016 WL 5929206, at *8 (11th Cir. Oct. 12, 2016) (unpublished) ("This court has consistently recognized deliberate ignorance of criminal activity as the equivalent of knowledge.") (internal quotations omitted); *United States v. Tai*, 750 F.3d 309, 314 (3d Cir. 2014) ("A willful blindness instruction is typically delivered in the context of explaining how the Government may sustain its burden to prove that a defendant acted knowingly in committing a charged offense.").

In *Global-Tech*, the Supreme Court surveyed Courts of Appeals cases applying willful blindness in the criminal context. *Global-Tech*, at 769 & n.9. It found that "[w]hile the Courts of Appeals articulate the doctrine of willful blindness in slightly different ways, all appear to agree on two basic requirements: (1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Id*. It held that "a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Id*.

In *Alston-Graves*, which was decided before *Global-Tech*, the D.C. Circuit expressed concern that a willful blindness instruction might result in a jury "convict[ing] a defendant for acting recklessly . . . or even for acting negligently." *Alston-Graves*, 435 F.3d at 340. The Supreme Court directly addressed that concern in *Global-Tech*. It concluded that the two requirements for willful blindness that it had pronounced "give willful blindness an appropriately limited scope that surpasses recklessness and negligence." *Global-Tech*, at 769.

The Government does not need to "present direct evidence of conscious avoidance to justify a willful blindness instruction." *United States v. Stadtmauer*, 620 F.3d 238, 259 (3d Cir. 2010) (emphasis omitted). A sufficient factual predicate exists if "there is evidence that the defendant engaged in behavior that could reasonably be interpreted as having been intended to shield him from confirmation of his suspicion that he was involved in criminal activity." *United States v. Macias*, 786 F.3d 1060, 1062 (7th Cir. 2015); *see also United States v. Lange*, 834 F.3d 58, 78 (2d Cir. 2016) ("To establish a factual predicate, there must be evidence that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact.") (internal quotations omitted); *United States v. Trejo*, 831 F.3d 1090, 1095 (8th Cir. 2016)

("A willful blindness or deliberate indifference instruction is appropriate when there is evidence to support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts."); *United States v. Ford*, 821 F.3d 63, 74 (1st Cir. 2016) (evidence supporting willful blindness instruction "can include evidence that the defendant was confronted with 'red flags'"); *United States v. Moreno-Azua*, 598 F. App'x 150, 154 (4th Cir. 2015) (per curiam) (willful blindness instruction appropriate when defendant's "theory of defense, as asserted in his opening and closing arguments, was that the Government lacked sufficient evidence to establish his knowledge" and there were a "myriad of warning signs" to support deliberate ignorance); *Moore v. Hartman*, 102 F. Supp. 3d 35, 118 (D.D.C. 2015) ("plainly or deliberately ignor[ing] [] red flags" raises issue of willful blindness).

"[T]he government is not required to choose between an actual knowledge and a conscious avoidance theory." *United States v. Addario*, 662 F. App'x 61, 2016 WL 6106896, at *2 (2d Cir. Oct. 18, 2016) (unpublished). "[A]ssuming there to be sufficient evidence as to both theories, it is not inconsistent for a court to charge a jury on both an actual knowledge theory and a willful blindness theory." *United States v. Stewart*, 185 F.3d 112, 126 (3d Cir. 1999).

II. **A Willful Blindness Instruction Is Appropriate for Money Laundering Counts**

Courts have recognized that a willful blindness instruction is particularly appropriate in money laundering cases. For example, in *United States v. McBride*, 724 F.3d 754, 757 (7th Cir. 2013), the Seventh Circuit relied on *Global Tech* and another Supreme Court decision, *United States v. Santos*, 553 U.S. 507 (2008),[1] to find that "willful blindness" was sufficient to establish

---

[1] In the plurality opinion in *Santos*, Justice Scalia observed that "the knowledge element of [a] money-laundering offense—knowledge that the transaction involves profits of unlawful activity—that will be provable (as knowledge must almost always be proved) by circumstantial evidence." 553 U.S. at 521. Separately, and in addition to circumstantial evidence of direct knowledge, the plurality went on to discuss the applicability of a willful blindness instruction: "Moreover, the Government will be entitled to a willful blindness instruction if the professional money launderer, aware of a high probability that the laundered funds were profits, deliberately avoids learning the truth about them—as might be the case when he knows that the underlying crime is one that is rarely unprofitable." *Id.*

5

the knowledge required for a money laundering conspiracy in violation of 18 U.S.C. § 1956(h). The court found that that the defendant's friend was willfully blind to the source of the defendant's proceeds.  *Id.*  The court relied on the fact that the friend "knew the defendant was a drug dealer, knew that most of the money she was depositing didn't come from the sale of clothing, and either knew that the money could have come only from his drug dealings or suspected as much yet feared that inquiring of the defendant would confirm her suspicion—a form of willful blindness that the law equates to knowledge." *Id.* (citing *Global-Tech* and *Santos*).  Thus, the failure to inquire as to the source of suspected illegal funds is a "deliberate action[]" that satisfies the willful blindness standard articulated in *Global-Tech*.

In *United States v. Flores*, the Third Circuit held that knowledge may be demonstrated by showing that a defendant either had actual knowledge or "deliberately closed his eyes to what otherwise would have been obvious to him concerning the fact in question. 454 F.3d 149, 155-56 (3rd Cir. 2006) (internal citation and quotation omitted).  That the defendant "did not ask the natural follow-up questions to determine the source of those funds could reasonably be considered by a jury to be evidence of willful blindness." *Id.* (quoting *United States v. Wert-Ruiz*, 228 F.3d 250, 257 (3d Cir.2000)).  Instead of asking these questions, he engaged in additional money laundering transactions of the same ilk.  *Flores*, 454 F.3d at 155-56.  "In sum, the jury's verdict reflects that it reasonably concluded, based on the evidence before it, that Flores was willfully blind to the illegal source and disposition of the funds in the accounts of the corporations he formed." *Id.*  Thus, the failure by a person to ask questions regarding the legitimacy of the money involved in transactions in their name is a deliberate action warranting a willful blindness instruction.

The legislative history of the money laundering statute confirms that a willful blindness instruction is appropriate. Relying upon a congressional report on money laundering, the Sixth Circuit held that the knowledge element is to be interpreted broadly. *See United States v. Hill*, 167 F.3d 1055, 1066-67 (6th Cir. 1999) (citing Senate Report No. 99-443 (1986)). The court relied in part on the fact that the Senate Report instructed that knowledge requirement for money laundering includes "instances of '*willful blindness*.'" *Id.* (citing S. Rep. No. 99-433 at 9) (emphasis added). Similarly, the Seventh Circuit relied upon this same report when upholding the use of a willful blindness instruction. *See United States v. Antzoulatos*, 962 F.2d 720, 724-25 (7th Cir. 1992). In *Antzoulatos*, the court noted in dicta that the legislative history of Section 1956 confirmed that more than a mere suspicion is required on a merchant's part that his customers are drug dealers. *Id.* at 724 n. 3. In fact, an earlier version of the statute contained "reason to know" and "reckless disregard" for the knowledge standards; however, the legislature replaced this language with "knowingly." *Id.* Yet, the report noted, as stated above, "'knowing' was to be defined like existing 'knowing' scienter requirements, to include instances of 'willful blindness.'" *Id.* Because the legislative history specifically identifies willful blindness as satisfying the knowledge element of money laundering, it is appropriately applied in this case.

Numerous federal courts of appeals have held that a willful blindness instruction is appropriate in a money laundering prosecution. *See United States v. Alaniz*, 726 F.3d 586, 611-13 (5th Cir. July 29, 2013) (approving "deliberate indifference" instruction where defendants conducted multiple financial transactions for which they did not have legitimate funds to conduct, allowed others to conduct transactions through their accounts, and received large cash deposits and wire transfers into their bank accounts); *United States v. Clay*, 618 F.3d 946, 953-54 (8th Cir. 2010) (finding willful blindness instruction appropriate where jury could reasonably conclude that

7

defendant either knew of the illegal activity or buried his head in the sand); *United States v. Rivera-Rodriguez*, 318 F.3d 268, 272 (1st Cir. 2003) ("[I]t would suffice for the jury to conclude that Trinidad consciously averted his eyes from the obvious explanation for the funds; he did not have to witness drug dealing or hear a confession."); *United States v. Etheredge*, 254 F. App'x 969, 2007 WL 3052856, at *1 (4th Cir. Oct. 19, 2007) ("The jury could infer that Etheredge 'deliberate[ly] ignor[ed]' the illegal source of Nicholson' income."). In addition, at least one circuit has referenced willful blindness among its pattern money laundering instructions. *See* Eighth Circuit Pattern Instructions, at 533 n.12 ("The 1956(a)(1)(B) 'knowing' requirement encompasses instances of 'willful blindness.'"). That a consensus exists among the circuits is important, as the D.C. Circuit in *Alston* took special note of how other circuits treated willful blindness instructions. *Alston*, 435 F.3d at 340. At the time of *Alston*, such instructions were "rare," however, that is no longer the case, especially in money laundering cases. *Id.*

Here, the government anticipates introducing both direct and circumstantial evidence of the defendant's *actual* knowledge that the bitcoin funds laundered through Helix represented the proceeds of darknet drug trafficking offenses and other unlawful activity. In the alternative, the government respectfully submits that a willful blindness instruction would be appropriate in light of *Global-Tech* and the other authorities discussed above, and seeks permission to refer to willful blindness in the government's opening statement.

## CONCLUSION

For the foregoing reasons, the government respectfully provides notice and moves for this Court to allow a willful blindness jury instruction and to permit the government to refer to willful blindness in its opening statement.

        Respectfully submitted,
        CHANNING D. PHILLIPS
        ACTING UNITED STATES ATTORNEY
        D.C. Bar No. 415793

BY:   */s/ Christopher B. Brown*
        Christopher B. Brown, D.C. Bar No. 1008763
        Assistant United States Attorney
        U.S. Attorney's Office for the District of Columbia
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 252-7153
        Christopher.Brown6@usdoj.gov

        C. Alden Pelker, Maryland Bar
        Trial Attorney, U.S. Department of Justice
        1301 New York Ave., N.W., Suite 600
        Washington, D.C. 20005
        (202) 616-5007
        Catherine.Pelker@usdoj.gov