**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 19-cr-395 (BAH)** |
| | : | |
| **LARRY HARMON,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S NOTICE OF INTENT TO ADMIT**
**CERTAIN GOVERNMENT EXHIBITS**

The United States of America, by and through its counsel, the Acting United States Attorney for the District of Columbia, hereby provides notice of its intent to introduce evidence described herein.  First, some evidence to be presented at trial is self-authenticating under Federal Rule of Evidence 902 and admissible without witness testimony, and the government intends to move for admission between witness testimony during the trial.  Second, the government intends to admit evidence obtained overseas.  Third, the government intends to move for admission of charts and summaries of evidence that is too voluminous for a jury to readily examine in court, and will move for admission after a witness sets the proper foundation.  Fourth, the government intends to use demonstratives in the form of visual aids in order to assist the jury in understanding the evidence.

## ARGUMENT

### I.  Government Intends To Admit Self-Authenticating Records Pursuant to Fed. R. Evid. 902

Under Fed. R. Evid. 902, certain categories of records are self-authenticating and "require no extrinsic evidence of authenticity in order to be admitted."  The government intends to admit self-authenticating records pursuant to Fed. R. Evid. 902(11), 902(13), and 902(14), as well as 18 U.S.C. § 3505, described further below.

Fed. R. Evid. 902(11) provides for the authentication of "Certified Domestic Records of a Regularly Conducted Activity."  The records must satisfy the business records requirements set forth in Fed. R. Evid. 803(6)(A)-(C).  Rule 803(6) provides that business records are admissible if they are accompanied by a certification of their custodian or other qualified person that satisfies three requirements: (A) that the records were "made at or near the time by—or from information transmitted by—someone with knowledge"; (B) that they were "kept in the course of a regularly conducted activity of a business"; and (C) that "making the record was a regular practice of that activity."  Id.  18 U.S.C. § 3505 provides a parallel mechanism for authenticating foreign records of regularly conducted activity where an appropriate certification has been obtained.

The Federal Rules of Evidence were amended in 2017 to add Rule 902(13) and 902(14), which allow the use of a certification to authenticate certain electronic evidence, previously provided by a live witness.  Fed. R. Evid. 902(13) addresses the authentication of "a record generated by an electronic process or system that produces an accurate result, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12)."  Just as business records are certified by Fed. R. Evid. 902(11), an electronic record is also deemed to be self-authenticating and requires no extrinsic evidence of authenticity for it to be admitted into evidence, as long as there is a "certification of a qualified person" that is consistent with the requirements of Rule 902.  See Fed. R. Evid. 902(13) (2017 amendment).  Similarly, pursuant to Fed. R. Evid. 902(14), "data copied from an electronic device, storage medium, or file," can be authenticated and admitted without witness testimony if it is "authenticated by a process of digital identification" and accompanied by a certification that meets the requirements of Rule 902(11).  These new rules did not change the standard of authentication, but rather made it easier for parties to authenticate certain types of electronic evidence without "the expense and

inconvenience of producing a witness" unnecessarily.  Fed. R. Evid. 902(13) advisory committee's note to 2007 amendment.

Rule 902(11) directs the party intending to offer a record into evidence pursuant to the rule to provide notice and to make the records and certifications available to the opposing party.  Rules 902(13) and 902(14) incorporate the notice provisions of Rule 902(11).

The government respectfully submits that this filing satisfies the requirement of "reasonable written notice" of the government's intent to admit the below-described records.  The bulk of the referenced certifications were produced to defense counsel alongside the underlying records in discovery; the remaining certifications – particularly certifications pertaining to specific trial exhibits that have not yet been finalized – will be provided to defense counsel as they are available and in advance of the pretrial conference.  Defense counsel will be afforded ample time and opportunity to object to the certifications.

In advance ot the pretrial conference, if the defendant has not objected to the use of the certifications or otherwise stipulated to certain records and facts, the government will move for a ruling from this court that the United States has made a *prima facie* showing that the records are authentic pursuant to Federal Rule of Evidence 902, such that the United States need not call witnesses merely to establish the authenticity of the records.  The defendant will retain the right to object to the admission at trial on the basis of hearsay and/or relevance.

The government respectfully reserves the right to supplement and amend this notice as trial approaches and will provide "reasonable" notice before trial.

**A.  Records from Financial Institutions, Online Service Providers, and Other Businesses**

As alleged in the Indictment, the defendant engaged in an extensive darknet money laundering conspiracy using cryptocurrency, concealing his activities through a wide network of financial accounts in fictitious and real names and using numerous online communication platforms.  A significant body of the government's evidence at trial will consist of records produced by financial institutions, online service providers, and other businesses, located in the United States and abroad.  The government intends to admit these records through certifications that satisfy Rule 902(11), 18 U.S.C. § 3505, and/or Rule 902(13), where applicable.  This evidence includes records from:

- 1&1 Media
- Amazon
- Apple
- Binance
- Bitfinex
- BitPay
- Bitstamp
- BlockFi
- Capital One
- Charter Communications
- Circle
- Coinbase
- Comcast
- Comenity Bank
- Dropbox
- Energy Group Network
- First American Title Insurance
- First View
- Google
- Groove Auto Colorado
- Gyft
- HitBTC
- Huntington National Bank
- Intuit
- JPMC

- Kraken
- LocalBitcoins
- LogMeIn/LastPass
- Metropolitan Commercial Bank
- Microsoft
- MoneyGram
- PayPal
- PNC Bank
- Poloniex
- Reddit
- Robinhood Financial
- Silvergate Bank
- Sprint
- Title Alliance
- Twitter
- UBS
- Verizon
- Village Title Ohio
- Wells Fargo
- Wyre
- Yahoo/Oath

The government may also introduce records from MtGox and Safemail.

**B. Official Government Records – Lack of Registration**

The defendant is charged with, *inter alia*, Operating an Unlicensed Money Transmitting Business, in violation of 18 U.S.C. § 1960(a); and Money Transmission Without a License, in violation of D.C. CODE § 26-1023(c).  The government intends to introduce official records from the Financial Crimes Enforcement Network (FinCEN) and the D.C. Department of Insurance, Securities and Banking (DISB) establishing that Helix was not registered as a money services business with either entity.  These records are self-authenticating and admissible under multiple provisions of Rule 902, including Rule 902(1) for public documents that are sealed and signed; Rule 902(2) for public documents that are signed and certified; and Rule 902(11) as certified records of regularly conducted activity.  The government hereby provides notice pursuant to Rule

902, as well as Rule 803(6), (7), (8), and (10), that it intends to offer certifications from FinCEN and DISB establishing the absence of public record as described above.

### C.   Screenshots and Video Screen Captures

The government's evidence includes numerous screenshots and video screen captures of the defendant's sites – Helix and Grams – and those of the darknet markets and other illicit services for which Helix laundered funds.   Many of these screenshots will be admitted through the witnesses who took the images.   In order to consolidate the number of witnesses and to provide greater flexibility for witness order, the government nonetheless intends to authenticate several screenshots and/or video screen captures through certifications pursuant to 902(13).   The certifications will be completed by the individuals who captured the screenshots and will describe the process through which the screenshot was taken.   This mirrors the approach of using 902(13) to authenticate a "printout of a webpage" described in the Advisory Committee Notes, and in electronic evidence expert Judge Grimm's seminal article regarding the then-pending Rules 902(13) and 902(14).   Paul W. Grimm et al., *Authenticating Digital Evidence*, 69 BAYLOR L. REV. *1 (2017) ("Plaintiff offers a certification in which a qualified person describes the process by which the webpage was retrieved.   Under the rule that certification sufficiently establishes that the webpage is authentic, if the witness's testimony at trial would do so.").

The government will move to admit these screenshots and video screen captures prior to or during the testimony of a witness familiar with the site displayed in the screenshot or capture.

### D.   Records from Seized Electronic Devices

Another large body of evidence in this case consists of incriminating files located on electronic devices that were seized and imaged by law enforcement.   This includes the numerous hard drives and devices owned and/or controlled by the defendant himself, as well as devices used

by darknet market administrators, vendors, and buyers and other illicit platforms involved in the Helix money laundering operation and conspiracy. Each of these electronic devices were forensically imaged or extracted by U.S. or foreign law enforcement, and then further reviewed to retrieve the particular files and records that the government intends to introduce in its case in chief. Much of this electronic evidence will be admitted through the testimony of witnesses who performed the forensic examination and review.

In order to streamline the proceedings, the Government seeks to authenticate records from these services through appropriate certifications, or a series of certifications where needed, complying with the requirements of Federal Rules of Evidence 902(11), 902(13), 902(14), and/or 18 U.S.C. § 3505. These certifications will include facts specific to each piece of electronic evidence, explaining the process through which the information on the electronic device or file was reliably retrieved and/or copied and the relevant records extracted therefrom. This will significantly decrease the number of purely authentication witnesses needed for trial – including many who would need to travel from across the United States and overseas – and to provide greater flexibility in the ordering of witness testimony. The government will move to admit these records prior to or during the testimony of a witness familiar with each of the sites or services in question.

Consistent with the process set forth above, the government intends to introduce records from numerous illicit darknet marketplaces, including Silk Road 2, a darknet marketplace that was seized by law enforcement in 2014; AlphaBay, a darknet marketplace dismantled by law enforcement in 2017; Hansa, a darknet marketplace that was seized by law enforcement in 2017; and WallStreet Market, a darknet marketplace that was seized by law enforcement in 2019. The government may also seek to introduce records from Valhalla, also known as Silkkitie, a darknet marketplace that was seized by law enforcement in 2019. These records will include records

related to the bitcoin addresses controlled by the sites, as well as records pertaining to a subset of buyers and sellers on the site who used Helix to launder their cryptocurrency.

The government will also introduce evidence from Welcome to Video, a darknet site distributing child sexual exploitation material that was seized by law enforcement in 2018. This evidence will include records related to the bitcoin addresses controlled by the site, as well as records pertaining to the activity of Welcome to Video users who laundered their site payments using Helix.

The government will introduce records from DeepDotWeb, a website that connected Internet users with Darknet marketplaces. DeepDotWeb was seized by law enforcement in 2019. These DeepDotWeb records include conversations between the defendant, using the "gramsadmin" moniker, and the DeepDotWeb administrator regarding Grams and Helix, as well as advertisements, interviews, articles, and promotional materials marketing Grams and Helix on the DeepDotWeb website.

The government will introduce records from BTC-e, a criminal virtual currency exchange seized by law enforcement in 2017. This evidence will include records of the defendant's financial transactions through BTC-e.

### E.  Blockchain Evidence

The government hereby provides notice of its intent to admit blockchain evidence through a hybrid certification that satisfies Rules 902(11) and 902(13) completed by a law enforcement official who regularly maintains a copy of the blockchain to perform his/her official duties.[1]

---

[1] *See* C. Pelker, C. Brown, and R. Tucker, *Using Blockchain Analysis from Investigation to Trial*, 69 DOJ J. FED. L. & PRAC., no. 3, 2021, at 59, 75-80 (discussing the use of 902 certifications to authenticate blockchain records).

Blockchain evidence readily meets the business records requirements set forth in Rule 803(6)(A)-(C).  The blockchain is a living record, with new blocks of transactions being appended with each confirmation at roughly 10-minute intervals.  The record is made by the miner validating the transaction block, based on the information relayed to it by the computers announcing the proposed transactions.  The blockchain is necessarily kept in the course of miners' and node operators' regularly conducted activity, and making the record is a regular practice of their activity—indeed, the maintenance of the blockchain is the core function of these virtual currency participants.  Blockchain records were thus "made at or near the time by—or from information transmitted by—someone with knowledge" and "kept in the course of a regularly conducted activity of a business," where "making the record was a regular practice of that activity."  Fed. R. Evid. 803(6)(A)-(C).

Rule 902(11) allows the certification to be completed by "the custodian or *another qualified person*."  Fed. R. Evid. 902(11) (emphasis added).  As the advisory committee notes to Rule 803(6) comment, records may be admitted through someone acting merely as an observer. Fed. R. Evid. 803(6), advisory committee notes ("Occasional decisions have reached for enhanced accuracy by requiring involvement as a participant in matters reported. . . . The rule includes no requirement of this nature. Wholly acceptable records may involve matters merely observed . . .").  This approach is reflected in the case law in this District and others.  *See, e.g., United States v. Adefehinti,* 510 F.3d 319, 325 (D.C. 2007).  This is significant in the blockchain context: It confirms that one need not be a miner or the operator of a full node involved in relaying and verifying transactions to appropriately certify the blockchain.  Rather, any individual – including a law enforcement official – who directly obtains a copy of the blockchain and meets the remaining requirements under Rule 803(6) may provide a certification under Rule 902(11).

The government submits that a certification satisfying only the requirements of 902(11) would appropriately authenticate blockchain records. Here, however, the government's certification will also set forth the requisite basis for a certification under 902(13) – namely, a high-level description of the transaction verification and validation process that ensures that the blockchain is resistant to any attempted manipulation, exemplifying a "system or process that produces an accurate result." Bitcoin is designed to ensure that the blockchain is resistant to any attempted manipulation. Bitcoin transactions are signed by the sender's private key, validated by nodes, confirmed by miners, and then added to the blockchain, whereupon subsequent node operators and miners affirm the integrity of the transaction by accepting the block in which the transaction is contained and adding new blocks on top of it. In short, the blockchain has extensive built-in protections to ensure the system or process produces an accurate result, meeting the requisite reliability showing envisioned by Rule 902(13).

## II.    Government Intends to Admit Evidence Obtained Overseas

At the time of the defendant's arrest in Ohio, law enforcement officials in Belize searched the defendant's condo in Belize pursuant to an official Mutual Legal Assistance Treaty request from the U.S. Department of Justice. U.S. law enforcement personnel were present in Belize during the search but did not participate in the search themselves, consistent with Belize law. Belize authorities found and seized numerous items, including hard drives, cryptocurrency storage hardware, and other electronics. This evidence was then transferred to the United States, pursuant to the Mutual Legal Assistance Treaty between the United States and Belize.

Absent a possible stipulation regarding the seizure of the items in Belize, the government will seek to admit the evidence without testimony from Belizean law enforcement officials. Instead, the United States intends to offer the testimony of a U.S. official who was present during

the search of the defendant's condo but remained outside, and who took possession of the seized items.  This individual will testify regarding what he personally observed prior to, during, and immediately following the search of the defendant's residence there.

The very short gap in the chain of custody here should not serve as a hindrance to admitting the evidence.  "Gaps in the chain of custody normally go to the weight of the evidence rather than its admissibility." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 n.1 (2009) (internal quotations and alterations omitted); *accord United States v. Williams*, 103 F.3d 122 (4th Cir. 1996). This is especially true where any "gap" in the chain of custody occurred while the evidence was located abroad and in the possession of a foreign government.  When chain of custody evidence is used to authenticate foreign evidence, courts can consider the chain of custody beginning when U.S. authorities first receive the evidence.  *See United States v. Collins,* 715 F.3d 1032, 1035-36 (7th Cir. 2013)  (rejecting argument that evidence should be excluded based on "lingering questions" surrounding the custody of the evidence "while it was in Mexico," after observing that, while no U.S. agents were present when the evidence was obtained, the evidence "never left the government's possession after the moment of receipt").  *See United States v. Vidacak,* 553 F.3d 344, 348-49 (4th Cir. 2009) (evidence authenticated despite "three year gap between the creation of the documents [by a foreign army] and their seizure in 1998").

A review of the items seized from the defendant's condo in Belize, including files contained on the electronic devices, have revealed extensive evidence verifying that the items were controlled by the defendant.  These records constitute "distinctive characteristics" independently sufficient to authenticate the computers under Fed. R. Evid. 901(b)(4), which provides for authentication based on "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances."  Fed. R. Evid. 901(b)(4).

That the devices were seized from the defendant's condo in Belize, found among his other personal belongings, further bolsters their authenticity.

Rule 901(b)(4) is "one of the most frequently used to authenticate… electronic records." *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 554–55 (D. Md. 2007).  Indeed, courts have repeatedly upheld the admission of computers and other electronic evidence, even in the absence of chain-of-custody evidence, based solely on identifying evidence found on item itself.  *See, e.g.*, *United States v. Reed*, 780 F.3d 260, 265-67 (4th Cir. 2015) (holding that "the government proffered evidence that the jury could use to attribute" a particular phone to defendant Dyer, despite offering "no testimony about how this phone was seized," because there was evidence of "photos of Dyer on the phone and text messages attributing the number to Dyer, including several that used … his first name"); *United States v. Siddiqui,* 235 F.3d 1318, 1322–23 (11th Cir. 2000) (email authenticated by the use of the defendant's email address and nickname, as well as its contents which included information the defendant would know); *United  States v. Fluker,* 698 F.3d at 999-1000 (7th Cir. 2012) (same); *United States v. Lewisbey*, 843 F.3d 653, 658 (7th Cir. 2016) (cell phones authenticated in part by information on the phones themselves such as "properties," "contacts," and communications associated with the defendant)

Indeed, evidence obtained from outside of the United States is frequently authenticated under Rule 901(b)(4) without showing an unbroken chain of custody.  *See United States v. Collins,* 715 F.3d 1032, 1035-36 (7th Cir. 2013) (holding that chain of custody "would be an impossible standard" for foreign evidence and approving admission of audio tapes created in Mexico based on voice identification and distinctive characteristics of the recordings); *United States v. Dumeisi,* 424 F.3d 566, 574-75 (7th Cir. 2005) (finding a file from Saddam Hussein's former Iraqi Intelligence Service was properly authenticated based on "distinctive characteristics" of the

documents themselves, "including the style and form of the documents" as well as the circumstances relating to the file recovery); *Xiao Wei Yang Catering v. Inner Mongolia, Inc.*, 2017 WL 507211 (D. Mass. 2017) (Chinese government screenshots authenticated based on substance and internal patterns).

The government does not believe that the defendant intends to object to the authentication of the evidence seized from the defendant's residence in Belize by arguing that the items are not, in fact, the evidence seized by the Belizean authorities. If the defendant does intend to make such an argument, the government can provide a more fulsome briefing regarding the extensive evidence from the electronic devices corroborating their use and control by the defendant.

## III.    Government Intends To Admit Summary Testimony and Charts

Federal Rule of Evidence 1006 provides that, "The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. Certain evidence in this case, such as the hundreds of thousands of bitcoin addresses controlled by Helix and records of over one million cryptocurrency transactions moved through the mixer, not to mention the other extensive complex financial transactions involved in the defendant's money laundering scheme and other related blockchain-based evidence, fall within the category of records too voluminous to be conveniently examined in court.

The government anticipates introducing summary charts to aid the jury. The charts will summarize relevant transactions involved in the defendant's money laundering scheme. Summary charts are permissible where: (1) the documents are so voluminous as to make comprehension difficult and inconvenient (though not necessarily impossible); (2) the documents themselves are admissible; (3) the chart is reasonably available for inspection and copying; (4) the chart is accurate

and non-prejudicial; and (5) the witness who prepared the chart is available to lay an appropriate foundation. *See United States v. Hemphill*, 514 F.3d 1350, 1358-59 (D.C. Cir. 2008) (noting that as long as a party has laid a foundation for the underlying documents, a chart summarizing them can itself be evidence under Rule 1006) (*citing United States v. Bray*, 139 F.3d 1104, 1109-10 (6th Cir.1998)).

Here, the government's charts will allow the jury to "follow the money" through the defendant's extensive efforts to launder his own funds and the funds of his criminal clients and co-conspirators. The government's charts will fairly and accurately outline the facts, without using inflammatory and prejudicial wording. The charts will accurately summarize otherwise admissible documents that are too voluminous to be easily or conveniently examined by the jury. The government will ask the Court to instruct the jury that the charts are being admitted solely for the jury's convenience, and are valid only to the extent they accurately reflect the underlying evidence and that if the summary evidence does not correctly reflect the facts proved at trial, the jury should give the summary evidence only such weight as it deserves.

The government also intends to present testimony summarizing lengthy and complex records and other testimony.

The government previously advised defense counsel that, if desired, it would make a copy of the blockchain available to defense counsel, to comply with Fed R. Evid. 1006 ("The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.") and any other applicable discovery obligations. As the blockchain is a publicly available dataset, defense counsel is also able to access and view the underlying blockchain data on his own,

which the government understands defense counsel has opted to do in lieu of arranging for a viewing or production through the government.

## IV.     Government Intends To Use Demonstratives to Aid the Jury

This case involves complex technical concepts, such as cryptocurrency transactions, the blockchain, mixing algorithms and techniques, the darknet, public and private keys, and hardware wallets.  The government witnesses will explain these concepts to the jury through the testimony and evidence relevant to this case.  In order to aid the jury in understanding the evidence, the government intends to use demonstrative exhibits in the form of visual aids, in addition to the summary exhibits discussed above.  Such demonstratives will be consistent with Fed. R. Evid. 611(a), intended to serve as pedagogical aids without wasting time or confusing the jury.

## <u>CONCLUSION</u>

For the foregoing reasons, the government provides notice of its intent to introduce the above-described evidence and requests that it be admitted at trial.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY
D.C. Bar No. 415793

By:     <u>/s/ *C. Alden Pelker*</u>
C. Alden Pelker, Maryland Bar
Trial Attorney, U.S. Department of Justice
1301 New York Ave. N.W., Suite 600
Washington, D.C. 20005
(202) 616-5007
Catherine.Pelker@usdoj.gov

Christopher B. Brown, D.C. Bar No. 1008763
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7153
Christopher.Brown6@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **:** | |
| | **:** | |
| **v.** | **:** | **Criminal No. 19-cr-395 (BAH)** |
| | **:** | |
| **LARRY HARMON,** | **:** | |
| | **:** | |
| **Defendant** | **:** | |

## <u>ORDER</u>

Upon consideration of the government's Notice of Intent to Admit Certain Government Exhibits, any opposition thereto, and such evidence and argument as has been presented at any hearing on the motion, it is this _____ day of _____, 2021, hereby

ORDERED, that the motion is GRANTED.

_____

BERYL A. HOWELL
CHIEF JUDGE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

17