UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 19-cr-395 (BAH) |
| | : | |
| LARRY DEAN HARMON, | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S RESPONSE TO DEFENSE MOTION
FOR ADDITIONAL NOTICE REGARDING EXPERT TESTIMONY

The United States of America, by and through its counsel, the Acting United States Attorney for the District of Columbia, hereby responds to the Defense Motion for Additional Notice Regarding Expert Testimony.

**INTRODUCTION**

On June 22, 2021, the government filed a notice of its intent to introduce expert testimony pursuant to Fed. R. Evid. 702, 703, and 705, and Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure. On June 28, 2021, the government provided a more detailed letter to defense counsel, including the experts' CVs. On July 2, the defendant filed a motion arguing that the government's notice was insufficient – both with regard to two particular named experts, Ms. Alexandra Comolli and Mr. Matthew St. Jean, and with regard to referenced possible additional experts.

**Nature of the Testimony**

The defendant expresses concern that the expert disclosures for Ms. Comolli and Mr. St. Jean do not include many explicit "opinions." This concern is rooted in an apparent misunderstanding of the primary purpose of Ms. Comolli and Mr. St. Jean's testimony – to provide the jury with an explanation of specialized concepts that will assist them in understanding and evaluating the evidence. Federal Rule of Evidence 702 explains that a qualified witness "may

1

testify in the form of an opinion *or otherwise*" (emphasis added). The Committee Notes further explain:

> Most of the literature assumes that experts testify only in the form of opinions. The assumption is logically unfounded. The rule accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts. Since much of the criticism of expert testimony has centered upon the hypothetical question, it seems wise to recognize that opinions are not indispensable and to encourage the use of expert testimony in non-opinion form when counsel believes the trier can itself draw the requisite inference.
> Fed. R. Evid. 702 advisory committee's note.

Under Rule 702, qualified expert testimony is admissible if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Expert testimony is appropriate if specialized knowledge will assist the jury "to understand the evidence or to determine a fact in issue." *United States v. Eiland*, No. 04-379 RCL, 2006 WL 2844921, at *5 (D.D.C. Oct. 2, 2006), *aff'd*, 738 F.3d 338 (D.C. Cir. 2013). The advisory committee's notes to Rule 702 specifically contemplate government agents with "extensive experience" serving as experts on issues within their unique purview. *See* Fed. R. Evid. 702 advisory committee's note.

This is precisely the expected form of Ms. Comolli's and Mr. St. Jean's testimony. The evidence in this case centers around darknet markets and cryptocurrency – complex, specialized topics that are likely not within the common knowledge of the average juror. The evidence also will include significant evidence retrieved through forensic review of the voluminous electronic evidence obtained during the course of the investigation. Ms. Comolli and Mr. St. Jean's testimony will explain these concepts to the jury in a way that will allow them to better understand and interpret the evidence provided during the course of the trial.

**Alexandra Comolli**

The defendant argues that the expert disclosure regarding Ms. Comolli's testimony is insufficient because it fails to explain the basis of her testimony and contains merely a "list of topics." The government provided Ms. Comolli's CV detailing her experience that informs her testimony and the below disclosure to defense counsel:

> The government expects that Ms. Comolli's testimony will include, among other things: (1) a general overview of Tor; (2) an explanation of darknet markets, including the method in which illicit goods and services are sold; (3) the measures that darknet markets take to maintain their administrators' and users' anonymity; (4) information about specific darknet markets, including those noted below; (5) an explanation of bitcoin and related core concepts, including bitcoin addresses, wallets, private keys, recovery seeds, nodes, miners, and the blockchain; (6) a description of cryptocurrency exchanges; (7) an explanation of blockchain analysis, including clustering; (8) an explanation of bitcoin mixers and cryptocurrency money laundering techniques; (9) the purpose of using a bitcoin mixer; (10) the *modus operandi* of darknet vendors and buyers.
>
> In particular, the government expects to elicit Ms. Comolli's testimony about the illicit activity occurring on darknet markets, including AlphaBay Market, Hansa Market, Valhalla Market (aka Silkkitie), Silk Road 2, Wall Street Market, Abraxas Market, Trade Route Market, Dream Market, Flugsvamp 2.0, Evolution Market, Russian Anonymous Marketplace (RAMP), Black Bank, Oasis, Agora Market, Doctor D's, Aviato Market, Nucleus Market, Middle Earth Market, and Mr. Nice Guy. Ms. Comolli is expected to opine that the vast majority of the goods and services sold on these sites are illicit in nature. Ms. Comolli will also explain the role that mixers play in furthering illicit activity. Ms. Comolli will further opine that the vast majority of mixer users are engaged in criminal activity. Ms. Comolli will also explain blockchain analysis and clustering. Ms. Comolli will provide expert testimony regarding the clusters associated with various darknet markets, including those identified above. Ms. Comolli will testify regarding the role that Grams and Helix played in the darknet ecosystem.

This is far more than simply a "list of topics" and is instead a roadmap of Ms. Comolli's expected testimony. Nevertheless, the government now provides the below supplemental information expounding on the above-described areas of Ms. Comolli's expected testimony and its basis.

*Basis of Testimony*

As detailed in her CV provided to defense counsel, Ms. Alexandra Comolli is one of the Federal Bureau of Investigation's premier Darknet and cryptocurrency experts. She has worked investigations of numerous darknet marketplaces and vendors, including significant work in an undercover capacity. She has spent hundreds of hours reviewing darknet marketplaces, including those about which she will testify, as well as darknet forums – such as Dred and the Hub – and related sites – such as DeepDotWeb and darknet market-specific sub-Reddits – where members of the darknet market community discuss tradecraft and other criminal enterprises. Ms. Comolli has conducted numerous undercover transactions on darknet marketplaces in support of multiple FBI investigations. She has debriefed many criminal targets who operated on the darknet. She has been involved in numerous investigations and prosecutions of darknet vendors and marketplace administrators, including the dismantlement of two of the largest marketplaces in operation. She designed and participated in training regarding investigating criminal activity on the darknet and blockchain analysis. A more detailed account of her credentials are contained in her CV. Ms. Comolli's testimony in the below areas is based on these experiences and these sources of knowledge.

*Areas of Testimony*

Ms. Comolli is expected to provide 1) a general overview of Tor. She will explain, in basic terms, how the Tor network routes users' communications through a series of relays across the globe in order to anonymize their Internet traffic. She will explain how Tor can be used to access Clearnet sites, and will also explain the Tor hidden service protocol that allows entire websites to conceal their true IP address and location. This testimony will be based primarily on Ms. Comolli's

own experience using Tor as an FBI undercover employee, her experience from past investigations, and the materials available on TorProject.org.

Ms. Comolli will provide 2) an explanation of darknet markets, including the method in which illicit goods and services are sold. Ms. Comolli will explain what a darknet market is and how vendors use the sites to sell illicit goods and services to users around the globe. Ms. Comolli's testimony will describe the common structure of marketplaces, including how listings are organized by category and how users can search across the categories. She will explain vendor listings and vendor rating systems, and how users can provide comments and feedback about vendors. Ms. Comolli will explain how the sites are typically run by one or more administrators, with support from additional moderators. Ms. Comolli will explain the role that the site staff play in operating the marketplace. Ms. Comolli will also explain vendor shops, in which vendors set up their own darknet sites to send funds directly to consumers. Ms. Comolli will explain that the darknet community often communicated on forums hosted on the marketplaces and on Reddit. This testimony will be based primarily on Ms. Comolli's experience using the marketplaces as an FBI undercover employee, her many hours spent reviewing the marketplaces, and her investigations and prosecutions of various darknet actors.

Ms. Comolli will also testify about 3) the measures that darknet markets take to maintain their administrators' and users' anonymity. This will include hosting the sites on Tor, wiping logs, using cryptocurrency and mixers, concealing the servers' location, encouraging users to encrypt communications, and stripping out metadata from uploaded files. Ms. Comolli will explain that darknet users are very concerned with apprehension by law enforcement. This testimony will be based primarily on Ms. Comolli's experience investigating darknet market administrators and users.

Ms. Comolli will also provide (4) information about specific darknet markets. Those markets will include AlphaBay Market, Hansa Market, Valhalla Market (aka Silkkitie), Silk Road 2, Wall Street Market, Abraxas Market, Trade Route Market, Dream Market, Flugsvamp 2.0, Evolution Market, Russian Anonymous Marketplace (RAMP), Black Bank, Oasis, Agora Market, Doctor D's, Aviato Market, Nucleus Market, Middle Earth Market, Mr. Nice Guy, Cloud9, and the Armory.[1] This testimony will explain the timeframe that each market was operating, the number and types of listings, particular features specific to the marketplaces, and the reputation of the markets among the darknet community. Ms. Comolli is expected to testify that, based on her experience, the vast majority of the goods and services sold on these sites are illicit in nature. This testimony is based primarily on Ms. Comolli's own experience reviewing those marketplaces and related darknet sites and her investigation of individuals operating on those marketplaces.

Ms. Comolli will also provide (5) an explanation of bitcoin and related core concepts, including bitcoin addresses, wallets, private keys, recovery seeds, nodes, miners, and the blockchain. This testimony will provide the jury with a baseline understanding of virtual currency that will aid in understanding the cryptocurrency evidence presented at trial. This will include (6) a description of cryptocurrency exchanges. Ms. Comolli will explain how cryptocurrency exchanges allow users to convert virtual currency into other forms of virtual currency or into traditional, fiat currency, and vice versa. She will explain that legitimate exchanges collect identifying information about their customers and attempt to block transactions tied to illicit activity. This testimony will be based on Ms. Comolli's work investigating cryptocurrency money laundering and gathering information from exchanges.

---

[1] Cloud9 and the Armory were not included in the original disclosure but will be included in Ms. Comolli's testimony, and are reflected on the Exhibit List.

Ms. Comolli will also provide (7) an explanation of blockchain analysis, including clustering. This testimony will explain how individuals can use the blockchain to trace payments across bitcoin addresses. This will also describe "clustering," through which Bitcoin addresses can be grouped together based on the information in blockchain. Ms. Comolli will explain that a user or business may create many bitcoin addresses, and when the user wants to complete a transaction with the bitcoin that he/she has received, the user may group multiple addresses together to send a single transaction. Ms. Comolli will explain that because the sender must have the private key for an address in order to spend the associated funds, multiple bitcoin addresses listed as inputs in the same transaction can be "clustered" together as under common ownership. Ms. Comolli will explain that, for large services such as exchanges or darknet markets, clusters can grow to hundreds of thousands of addresses all under common ownership. Ms. Comolli will testify that law enforcement, blockchain analytics companies, financial institutions, and researchers use "clustering" when tracing funds on the blockchain. Ms. Comolli's testimony will introduce and authenticate the clusters of several of the above-listed darknet markets, as reflected in the Government's Exhibit List. This testimony will be based on Ms. Comolli's extensive experience tracing funds on the blockchain in support of dozens of law enforcement cases and her work participating in and leading trainings on blockchain analysis.

Ms. Comolli will provide (8) an explanation of bitcoin mixers and cryptocurrency money laundering techniques, and she will discuss (9) the purpose of using a bitcoin mixer. She will explain the different steps that criminals commonly take to conceal their activity on the blockchain. She will explain that criminals are often concerned about being identified by law enforcement or having their accounts shut down at their virtual currency exchange or traditional financial institution, if their transactions are connected to illicit activity on the blockchain. She will explain

that criminals use a variety of methods to cloak their activity and true identity, including opening accounts with false information; using accounts at less scrupulous exchanges, often operating in foreign jurisdictions; sending funds through rapid series of transactions to multiple addresses on the blockchain; using "peel chains," whereby a large amount of cryptocurrency sitting at one address is sent through a series of transactions in which a slightly smaller amount of cryptocurrency is transferred to a new address each time; moving from one cryptocurrency to another, a practice commonly called "chain hopping"; and using mixers or tumblers.  Ms. Comolli will testify about the features of mixers, including Helix, that make them most popular with criminals.  Ms. Comolli will also explain how the use of a mixer makes it difficult for law enforcement to trace funds on the blockchain and to identify criminals.  Ms. Comolli will explain the common fee structures of using a mixer, in addition to an exchange.  She will testify about the benefits to criminals of using a mixer as opposed to sending funds through an exchange, explaining that both actions conceal the user's activity on the blockchain but that a mixer ensures that law enforcement cannot get access to underlying identifying information.  She will explain how mixers serve to promote the underlying criminal activity.  She will testify that, based on her experience, the vast majority of mixer users are engaged in criminal activity.  This testimony will be based primarily on Ms. Comolli's own experience investigating money launderers, tracing transactions on the blockchain, and attempting to identify criminals who used mixers, including Helix.

Ms. Comolli will also explain (10) the *modus operandi* of darknet vendors and buyers.  This will include the use of Tor, as noted above, as well as cryptocurrency money laundering techniques  Ms. Comolli will explain that darknet actors are very concerned with detection and apprehension by law enforcement.  She will testify that darknet actors commonly share advice for increasing their operational security, or "opsec."  She will explain the significance of deleting logs.

Ms. Comolli will explain Pretty Good Privacy (PGP), an encryption program that provides cryptographic privacy and authentication for data communication. Ms. Comolli will explain how darknet actors use PGP to sign, encrypt, and decrypt messages. She will explain how this protects the activity and identity of criminals, even if the server containing the messages is seized by law enforcement. Ms. Comolli will testify about the importance of trust to the darknet community. She will testify regarding the role that Grams and Helix played in the darknet ecosystem. This testimony will be based primarily on Ms. Comolli's experience as an undercover and her investigation of darknet users.

**Matthew St. Jean**

Mr. St. Jean was the primary forensic specialist involved in the imaging and review of electronic evidence in the present case. Mr. St. Jean's extensive credentials as a forensic examiner are detailed in his CV provided to defense counsel and summarized in the government's Notice of Intent to Admit Expert Testimony. The bulk of Mr. St. Jean's testimony will be to authenticate the images of the defendant's devices and explain where certain extracted files were found within the devices. Mr. St. Jean will also explain certain basic cyber concepts and terms, including application programming interfaces (APIs) and scrapers. He will testify regarding programs and code that the defendant used to operate Helix and Grams, including phpMyAdmin, a software tool used to administer databases. Mr. St. Jean is also expected to explain certain scripts or pieces of code found on the defendant's devices, including APIs for a cryptocurrency exchange used in the laundering of the Helix funds, and scripts used to retrieve information from darknet marketplaces. Mr. St. Jean will essentially serve as a translator, explaining computer code, metadata, or technical details to the jury.

**Additional Experts**

The government's notice pertained to two particular experts – Ms. Alexandra Comolli and Mr. Matthew St. Jean. While noticing those two experts, the government also previewed the possibility of additional experts: 1) an additional expert on clustering, 2) an expert on the Bank Secrecy Act, and 3) potential additional computer forensics specialists who imaged Mr. Harmon's devices and who may need to be noticed as experts in order to authenticate and introduce the images. The defendant objects that this disclosure is inadequate under Rule 16; but this misunderstands the nature and purpose of the government's filing. As the government noted in its filing, if such experts are determined to be needed for trial, the government will supplement its notice and provide the needed information to defense counsel. The references to these potential experts were not intended to serve as a fulsome expert disclosure. The government is in conversations with defense counsel that may moot the need for some or all of these additional experts; otherwise, the government anticipates noticing any additional experts in advance of the pretrial conference.

## CONCLUSION

The government respectfully submits that the testimony of the above experts will help the jury understand the evidence in this case.

        Respectfully submitted,

        CHANNING D. PHILLIPS
        ACTING UNITED STATES ATTORNEY
        D.C. Bar No. 415793

By:    /s/ *C. Alden Pelker*
        C. Alden Pelker, Maryland Bar
        Trial Attorney, U.S. Department of Justice
        1301 New York Ave. N.W., Suite 600
        Washington, D.C. 20005
        (202) 616-5007
        Catherine.Pelker@usdoj.gov

        Christopher B. Brown, D.C. Bar No. 1008763
        Assistant United States Attorney
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 252-7153
        Christopher.Brown6@usdoj.gov