UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 19-cr-395 (BAH) |
| | : | |
| LARRY DEAN HARMON, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S REPLY IN SUPPORT OF MOTION IN LIMINE REGARDING WILLFUL BLINDNESS INSTRUCTION AS TO COUNTS ONE AND TWO AND PERMISSION TO REFER TO WILLFUL BLINDNESS IN OPENING STATEMENT**

The United States of America, by and through its counsel, the Acting United States Attorney for the District of Columbia, respectfully submits the following reply in support of its willful blindness motion.

## ARGUMENT

The defendant does not dispute that the Supreme Court's decision in *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011), sets forth the controlling legal standard, or that *Global-Tech* authorizes a willful blindness instruction to ensure that "defendants cannot escape the reach of [criminal] statutes by deliberately shielding themselves from clear evidence of critical facts that are strongly suggested by the circumstances." 563 U.S. at 766. Indeed, the defense concedes that "willful blindness is now widely accepted, including by the Supreme Court in *Global-Tech*." ECF No. 105, at 3. Here, the government's proposed willful blindness instruction reflects the standard as articulated in *Global-Tech*, namely, that "(1) [t]he defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Id.* at 769. There should be no objection.

But the defense makes two further arguments. First, the defense argues (at 4-5) that willful blindness cannot apply to a situation in which a defendant deliberately fails to investigate or avoids asking questions that would otherwise be prompted by the circumstances. The defendant begins by conflating recklessness with the subjective belief prong of the *Global-Tech* standard. That is not completely accurate. Although the two standards are similar, there is a distinction between a defendant who "knows of a substantial and unjustified risk" of wrongdoing (recklessness) and one who "subjectively believe[s] that there is a high probability" of wrongdoing (willful blindness), *see Global-Tech*, 563 U.S. at 769-70—with willful blindness requiring a somewhat higher level of certainty ("high probability") than recklessness.

More to the point, the defendant then misconstrues the Supreme Court's reference to "tak[ing] deliberate actions to avoid learning of [a] fact," *id.* at 769, to require some sort of "action" beyond failure to investigate or ask questions. That is not the standard. For example, under the Fifth Circuit test articulated in *United States v. Freeman*, 434 F.3d 369 (5th Cir. 2005)—which was one of the cases cited favorably in *Global-Tech*'s survey of circuit precedent, *see* 563 U.S. at 769 n.9 (citing *Freeman* among others)—a willful blindness instruction is appropriate where the defendant "purposely *contrived* to avoid learning of the illegal conduct." 434 F.3d at 378 (emphasis added). The Fifth Circuit subsequently applied the purposeful contrivance standard in *United States v. Alaniz*, 726 F.3d 586, 611-13 (5th Cir. 2013), finding that a deliberate ignorance instruction was warranted where the defendants operated sham front companies to launder drug trafficking proceeds, and the evidence showed that they were aware of a host of suspicious circumstances, including receiving significantly more cash deposits and loans than sales, receiving large cash deposits and wire transfers, and allowed others to conduct transactions in their bank accounts. *Id.* at 612-13. The Fifth Circuit did not require some further "action" by the defendants,

but approved the district court's deliberate indifference instruction on the ground that the "totality of the evidence" supported the inference that the defendant's were aware of a high probability of illegal conduct and "consciously attempted to escape confirmation of it." *Id.* at 613 (internal quotations omitted). Even in *Global-Tech* itself, the defendant company's actions constituted, at most, a deliberate and pointed decision not to make a full investigation into the patent status of the technology it was infringing. *See* 563 U.S. at 771 (defendant company's CEO conducted extensive "market research" and was presumably aware of the competitor's technology, but failed to provide relevant facts to attorney retained by the company to conduct patent search).

The defendant also argues that the government has not "proffered—much less introduced—evidence" to support a willful blindness instruction. ECF No. 105, at 5. But the Indictment itself alleges that the defendant created a Google-like search engine called Grams devoted exclusively to the darknet, which the defendant himself believed "primarily sold drugs and illegal items." Indictment, ECF No. 1, at 2. He then created a bitcoin money laundering service called Helix—linked to Grams and available exclusively to darknet customers running the Tor browser—charged a fee of approximately 2.5% on every transaction, and marketed the service as a way for customers on the darknet to avoid "LE" (*i.e.*, law enforcement) and being "arrested." *Id.* For someone to create a service that serves no other function than to make bitcoin transactions difficult to trace, link the service to a search engine for illegal drugs, and explicitly market the service as a way for customers on the darknet to avoid being arrested by law enforcement, raises *at least* an inference of willful blindness as to the source of the funds being transacted.

The evidence at trial will show that the defendant specifically designed Helix in a way that would avoid collecting information about his customers. This was not mere negligence; it was a design feature that the defendant actively touted to his customers on the darknet. For instance on

3

August 5, 2014, the defendant submitted an "article" to the darknet site DeepDotWeb to advertise a new version of Helix (which he called "the best and easiest to use Bitcoin Cleaner for the dark markets") and the integration of Helix into darknet markets including Evolution and Cloud 9. As the defendant explained:

> Helix Market integration is our newest Helix and the one I am most excited about. . . . This is the fastest and most private way to withdraw clean coins from a market. Helix Market Integration is very private. Since Grams doesn't know the user who withdrew the coins and the market doesn't know the withdrawal address. This double blind system insures your privacy. Cloud 9 is the only market right now to offer this feature since they worked day and night this past week with me to perfect the system. The system we have set up makes it so easy and secure I am sure other markets will be adding it soon.

Ex. A. In the defendant's own words, his Helix service (linked to Grams) was consciously designed so that the defendant "doesn't know the user who withdrew the coins." By designing a "very private," "double blind" system to launder bitcoin withdrawals from darknet markets trafficking in illegal drugs, the defendant clearly took deliberate action to avoid learning the true nature of the transactions laundered through Helix.

**CONCLUSION**

For the foregoing reasons, the government respectfully provides notice and moves for this Court to allow a willful blindness jury instruction and to permit the government to refer to willful blindness in its opening statement.

        Respectfully submitted,
        CHANNING D. PHILLIPS
        ACTING UNITED STATES ATTORNEY
        D.C. Bar No. 415793

BY:    */s/ Christopher B. Brown*
        Christopher B. Brown, D.C. Bar No. 1008763
        Assistant United States Attorney
        U.S. Attorney's Office for the District of Columbia
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 252-7153
        Christopher.Brown6@usdoj.gov

        */s/ C. Alden Pelker*
        C. Alden Pelker, Maryland Bar
        Trial Attorney, U.S. Department of Justice
        1301 New York Ave., N.W., Suite 600
        Washington, D.C. 20005
        (202) 616-5007
        Catherine.Pelker@usdoj.gov