UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LARRY DEAN HARMON,<br><br>Defendant. | Criminal Case No. 19-395 (BAH)<br>Chief Judge Beryl A. Howell |

## ORDER REGARDING TRIAL PROCEDURES

The Standing Order in this case, **ECF No. 6**, is supplemented for purposes of the trial scheduled for **September 13, 2021**, as follows:

1. **Pretrial Deadlines**.  Unless otherwise provided by order of the Court—
    a. The government shall submit, by **August 16, 2021**, to defendant all summary testimony, charts and demonstratives that it proposes to present to the jury and use in its case-in-chief; and by **August 27, 2021**, after conferral with the government, defendant shall submit any unresolved objections to the same to the Court for resolution.
    b. Defendant shall submit, by **August 16, 2021**, to the government any demonstratives he proposes to present to the jury and use during opening statements; and by **August 27, 2021**, after conferral with defendant, the government shall submit any unresolved objections to the same to the Court for resolution.
    c. A hearing on any unresolved objections in (a) and (b) above is tentatively scheduled for **Thursday, September 9, 2021 at 10 AM in Courtroom 22A**.

2. **Schedule**.  The trial will begin with jury selection on **Monday, September 13, 2021, at 9:00 a.m. in Courtroom 20, the Ceremonial Courtroom.**  Upon completion of jury selection, the trial will take place in **Courtroom 22A**. Unless the parties are otherwise notified, the Court will convene the trial from **9:30 a.m. to 12:30 p.m.** and **1:30 p.m. to 5:00 p.m.**, Monday through Friday, with a brief mid-morning and mid-afternoon recess.  Counsel should be prepared to deliver their opening statements promptly after the jury has been selected and sworn-in.
    a. Opening statements for the parties shall not exceed 2 hours per party. Any demonstratives to be used in opening statements must be cleared with counsel for the other side in accordance with the schedule set out, *supra* in ¶ 1.
    b. Immediately after opening statements, the government must be prepared to call its first witness.
    c. Unless otherwise instructed by the Court, counsel should be present in the courtroom each morning at least fifteen minutes before trial begins to address any preliminary matters.  Trial before the jury will convene promptly at the designated time on each trial day to avoid keeping the jury waiting.  Counsel must be in the courtroom shortly before Court is scheduled to begin or resume after a recess.

3. **General Courtroom Rules**. In addition to exercising civility, counsel shall, unless leave is otherwise granted:
    a. examine witnesses from the lectern and refer to all individual parties and witnesses, over the age of 18, as "Mr." or "Ms." rather than by a first name or nickname;
    b. request permission before approaching a testifying witness;
    c. stand when raising objections;
    d. remain seated when the jury is entering or leaving the courtroom;
    e. direct all statements for the record to the Court rather than to the opposing party.

4. **Jury Selection Process**. An outline of the jury selection process to be used in this criminal matter is set forth in **Attachment A** to this Order.

5. **Technical Equipment**. Counsel needing technical assistance with courtroom equipment (*e.g.*, overhead projectors, video display monitors) must contact the Courtroom Technology Administrator of the Clerk's office at (202) 354-3019.

6. **Statement of the Case.** The Court intends to describe the case to the venire panel as follows:

   **This is a criminal case. The government alleges that the defendant, LARRY DEAN HARMON, violated federal and local D.C. Code law by conspiring to launder money and operating an unlicensed money transmitting business. The government alleges that, between or about July 2014 and December 2017, MR. HARMON violated these laws by operating two online services, called GRAMS and HELIX, to conceal from law enforcement transactions that involved the virtual currency called "bitcoin" for the purchase and sale of illegal goods and services. The government further alleges that these transactions occurred on the Darknet, which consists of online sites not accessible using conventional Internet search engines. Mr. Harmon denies that he conspired to launder money or intended to transmit money without a license and claims that he operated HELIX as a privacy enhancing tool and to increase the ease of use of bitcoin.**

7. ***Voir Dire* Questions**. The *voir dire* questions that the Court intends to pose to the venire panel collectively are listed in **Attachment B** to this Order.

8. **Motions or Objections During Trial**.
    a. **No evidentiary objections shall be argued in the presence of the jury.** Counsel must state clearly and succinctly the legal basis for any objection in a word or short phrase. To protect the record for appellate review, a party may explain or amplify its objections on the record outside the hearing of the jury, either after the jury has been excused or at a bench conference. If counsel plans to engage in a line of inquiry that requires judicial pre-approval counsel may seek a bench conference.
    b. **Bench Conferences should be requested only when necessary** because counsel intends to refer to issues requiring pre-clearance (*e.g.*, anticipated questions or testimony may refer to missing witness or potentially inflammatory subject matter). Counsel should not

expect requests to approach the bench to be routinely granted and should, instead, consider whether the issue counsel wishes to address at the bench can wait until the jury is excused for a recess.

9. **Witness Examination**.
    a. A party calling a witness must arrange for the witness' presence until cross-examination is completed. Failure to have a witness present for cross-examination is grounds for striking the witness' testimony. Except in extraordinary circumstances, the Court will not recess simply because a witness is unavailable.

    b. With the exception of the parties and government case agent, all witnesses must remain outside the courtroom except when testifying. FED. R. EVID. 615.

    c. After a non-defendant witness has been tendered for cross-examination and until the witness has been tendered back for redirect, counsel calling that witness (including law enforcement officers or investigators) to testify must have no further discussions with that witness concerning any aspect of the testimony already given or anticipated. With regard to a defendant-witness, the Court refers the parties to the guidelines set forth in *United States v. McLaughlin*, 164 F.3d 1, 4–7 (D.C. Cir. 1998), *cert. denied*, 526 U.S. 1079 (1999).

10. **Jury Instructions**. If events during trial necessitate an immediate jury instruction, counsel requesting the instruction must provide the Court with the text of the proposed instruction; otherwise, the Court will consider the request waived. If a party would like the instruction included in the Court's final instructions to the jury, that party bears the responsibility of making such a request to the Court during the charging conference.

11. **Juror Confidentiality**. The names and personal information of prospective and sitting jurors in any trial of this matter shall be kept confidential and not disclosed outside of open court, except upon order of the Court. *See*, D.D.C. JURY SELECTION PLAN, § K.1, available at https://www.dcd.uscourts.gov/sites/dcd/files/JurySelectionPlanReviewed2015.pdf. Counsel and parties are cautioned that violation of this directive may result in contempt proceedings.

12. **COVID-19 Protocols.** To ensure the health and safety of all trial participants, courthouse staff and visitors during the COVID-19 pandemic, special procedures may be employed during the course of the trial in addition to conducting jury selection in the Ceremonial Courtroom, Courtroom 20, *see supra* ¶ 2. As circumstances warrant closer in time to the start of the trial, this Order may be supplemented to outline such special procedures.

**Date:** August 5, 2021

_____
BERYL A. HOWELL
Chief Judge

## ATTACHMENT A TO TRIAL ORDER
### Jury Selection Process (Modified for COVID-19)

1. <u>Number of Jurors Seated</u>.  As required by the Federal Rules of Criminal Procedure, a unanimous verdict must be returned by a jury of **12** members in criminal trials, absent special circumstances.  FED. R. CRIM. P. 23(b) and 31(a).  To provide prudently for the sickness or disability of any juror, two alternate jurors will also be selected.  FED. R. CRIM. P. 24 (c)(1).

2. <u>Qualified Venire Panel</u>.  The number of qualified panelists is computed by totaling the following: the number of jurors to be selected, the number of alternates to be selected, and the number of peremptory challenges.  Thus, in this single defendant criminal case, in which the defendant has 10 and the government has 6 peremptory challenges, *see* FED. R. CRIM. P. 24(b)(2), plus each side has 1 challenge with respect to alternates, *see* FED. R. CRIM. P. 24(c)(4)(A), Chief Judge Howell will conduct the *voir dire* of a sufficient number of prospective jurors for a qualified venire panel, after excusing panelists for cause, of 32 panelists.

3. <u>Locations</u>.  During the jury selection process, prospective jurors initially will be seated in two or more courtrooms and/or conference rooms to ensure appropriate social distancing at all times. Chief Judge Howell and the parties will remain in the Ceremonial Courtroom. A member of the court staff will be present in each room to facilitate the jury selection process by assisting and directing prospective jurors.

4. <u>Venire List</u>.  Upon arrival, and after completing and passing the health screening, prospective jurors will be assigned to a designated courtroom and/or conference room to await further instructions.  Chief Judge Howell and counsel will be given the written list of the venire panel ("venire list") for the prospective jurors within each room.

5. <u>Visual Capabilities</u>.  Video screens in each location will allow all prospective jurors to see Chief Judge Howell and trial participants in the Ceremonial Courtroom and vice versa (*i.e.*, trial participants in the Ceremonial Courtroom will be able to see prospective jurors in the other rooms on video screens).

6. <u>Administration of Oath and Preliminary Matters</u>.  After the prospective jurors are seated, the oath will be administered.  Chief Judge Howell will then make a statement about the importance of jury service and explain the selection process, including the purpose of the sheet of paper and pencils provided to each prospective juror by court staff.

7. <u>Simultaneous *Voir Dire* Questions to Panel</u>.  Chief Judge Howell will decide what *voir dire* questions will be asked after consideration of the proposed *voir dire* questions submitted by the parties as part of the Joint Pre-Trial Statement.  FED. R. CRIM. P. 24(a).  Chief Judge Howell will ask general questions collectively to the panel from the Ceremonial Courtroom using an internal video broadcasting system to address all prospective jurors simultaneously.  The jurors will be instructed to mark on the paper the number of any question to which the juror has an affirmative answer or for which they need to provide further information to facilitate follow-up questions individually.

8. <u>Individual Responses to Questioning</u>. Chief Judge Howell will conduct individual follow-up questioning of prospective jurors in the Ceremonial Courtroom, and court staff will direct the movement of prospective jurors to and from the Ceremonial Courtroom in a manner that maintains social distancing at all times.  Prospective jurors will be escorted individually to the Ceremonial

courtroom in the order listed on the venire list for further questioning by Chief Judge Howell. Each prospective juror will be asked follow-up questions about any affirmative response indicated on the paper. Counsel will have the opportunity to request that Chief Judge Howell ask additional pertinent follow-up questions of individual jurors at this time. FED. R. CRIM. P. 24(a)(2). The venire panel will be instructed not to discuss the case or the *voir dire* questions.

9. Strikes for Cause. Strikes for cause should be made immediately after the individual questioning of the prospective juror and may be ruled upon before the prospective juror is asked to rejoin the venire panel. After 32 prospective jurors have been qualified, following individual *voir dire* and resolution of strikes for cause, qualified prospective jurors in the venire panel will be directed by court staff to designated seating in the Ceremonial Courtroom for the final stages of jury selection, including the exercise of preemptory challenges.

10. Excused Prospective Jurors. Prospective jurors excused for cause following individual questioning will be directed either to leave the courthouse or to check in with the Jury Office for further instructions.

11. Peremptory Challenges For Regular Jurors. The parties are permitted to exercise preemptory challenges only as to qualified prospective jurors in the venire.

    The government exercises one challenge and the defendant exercises two challenges in four rounds, then each side exercises one challenge for two rounds, for a total of 6 and 10 challenges for the government and defendant, respectively. In each round, the government will exercise its challenge first. A pass by any side counts as a strike. If the government fails to exercise a challenge on a round, and the defendant also fails to exercise a challenge on that same round, the peremptory challenge process for the twelve-person jury will be deemed completed.

    For both regular and alternate jurors, the courtroom deputy clerk will provide the parties with a document upon which they should record their respective peremptory strikes.

12. Peremptory Challenges For Alternate Jurors. Following the exercise of preemptory challenges for regular jurors, the government may exercise one peremptory challenge as to the prospective alternate jurors, followed by the defendant, who may do the same. *See* FED. R. CRIM. P. 24(c)(4).

13. *Batson* Challenges. Prospective jurors who were stricken on a peremptory challenge will not be excused from the courtroom until the entire selection process has been completed, including the resolution of any challenges pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986). Counsel are forewarned that should a *Batson* challenge be found to be meritorious, the remedy may be to impanel the improperly stricken juror on the jury and preclude the party who improperly exercised the strike from excluding that juror. Other remedies to address *Batson* violations are also available, including the imposition of monetary sanctions. Counsel should therefore be mindful of the obligation not to exercise peremptory challenges that seek to exclude jurors based on race or gender.

## ATTACHMENT B TO TRIAL ORDER
### *Voir Dire* Questions

1. Based on the information I have given you about this case, have you heard or read about this matter before coming to court today or do you believe you know anything about the facts and circumstances of this case?

2. The United States is represented in this case by **CHRISTOPHER BROWN** and **ALDEN PELKER**, and they are being assisted by **MICHON TART**, all of whom work at the U.S. Attorney's Office here in Washington, D.C. PLEASE STAND. They are also being assisted by Internal Revenue Service-Criminal Investigation Special Agent **MATHEW PRICE**. Do you recognize or know these individuals in any capacity?

3. The defendant at trial is **LARRY DEAN HARMON**. PLEASE STAND. Do you recognize or know **Mr. HARMON** in any capacity?

4. The attorney representing defendant **LARRY DEAN HARMON** is **CHARLES FLOOD.** He is being assisted by **CARMEN DELEON,** a paralegal with Flood & Flood Law Office. Do you recognize or know **CHARLES FLOOD** or **CARMEN DELEON** in any capacity?

5. During the trial, you may hear testimony from or about a number of people. The attorneys will now identify for you the names of people who may testify or about whom you may hear testimony. Listen carefully and, if you recognize or know any of the people named, please mark your paper beside Number 5. The government may state names first, followed by Mr. Flood.

6. Please look around you. Do you know or recognize any other prospective jurors or anyone else on the courtroom staff or me?

7. The lawyers have predicted that the presentation of evidence in this trial may last two to three weeks, but it could run longer. We will not sit on **Wednesday, September 16**, which is a Jewish holiday. The jury will sit Monday through Friday generally from 9:30 a.m. to 5 p.m., although the starting and ending times may vary. The length of jury deliberations following the presentation of evidence at trial will be determined by the jury itself. Do you have an urgent or extremely important matter to attend to this week and the next two weeks, such that you could be faced with a hardship if selected to serve on the jury in this case?

8. Do you have any vision, language or hearing problems, or any other physical or medical problems, that might interfere with your ability to hear or understand what the witnesses say in this case, to view exhibits, or to give your full attention to this case?

9. Do you have any moral, religious, or ethical beliefs that prevent you from sitting in judgment of another person?

10. Have you, any close family member, close friend or household member ever studied law or been employed by a lawyer or a law firm, been a paralegal, or performed legal investigative work?

11. Have you, any close family member, close friend or household member ever been employed by any local, state, or federal law enforcement agency or a private security company? Law enforcement

agencies include any police department or sheriff's department inside or outside of the District of Columbia; special police officers; correctional officers; U.S. Department of Justice; U.S. Attorney's Office; District Attorney's Office; U.S. Marshals Service; Internal Revenue Service; U.S. Secret Service; Federal Bureau of Investigation (or FBI); Bureau of Alcohol, Tobacco, and Firearms; Drug Enforcement Administration; probation office; and parole office.

12. Have you, any close family member, close friend or household member ever worked for a financial regulation agency, such as the D.C. Department of Insurance, Securities, and Banking; the U.S. Department of the Treasury; the Financial Crimes Enforcement Network; the U.S. Securities and Exchange Commission; the Federal Reserve System; the Commodity Futures Trading Commission; the Federal Deposit Insurance Corporation; or similar agency?

13. Have you, close family member, close friend or household member ever worked for any person or organization that does criminal defense work, such as the Federal Public Defender, the Public Defender's Office, defense attorneys, a private law firm, or as a private investigator?

14. If you have served before as a juror at a civil or criminal trial, or on a grand jury, was there anything about your service that might affect your ability to serve fairly and impartially in this trial?

15. Have you, close family member, close friend or household member ever been arrested or convicted of a crime, been a victim or a witness to a crime, testified in court or before a grand jury as a witness to a crime, or been required to appear in court?

16. In this case, law enforcement officers from the Federal Bureau of Investigation (or FBI) and the Internal Revenue Service (or IRS) may be called as witnesses.  Would you be inclined to give either greater or lesser weight to the testimony of these individuals simply because he or she is a law enforcement officer?

17. Every defendant in a criminal trial is presumed innocent and, therefore, has no obligation to testify or present any evidence in the case. Indeed, every defendant in a criminal case has a constitutional right not to testify and a defendant's choice not to testify cannot be used against him.  Would you have any difficulty accepting and applying this legal instruction?

18. To reach a verdict on each charge in the indictment, every juror must agree on the verdict.  That is, any verdict must be unanimous.  In deliberations you must consider the opinions and viewpoints of your fellow jurors but you must also follow your own conscience and be personally satisfied with any verdict.  Would you have difficulty expressing your own opinions and thoughts about this case to your fellow jurors?

19. In this case, you may hear from one or more witnesses who have already pled guilty to a criminal offense and who have entered into cooperation agreements with the government. Would the use of these cooperating witnesses prevent you from rendering a fair and impartial verdict in this case?

20. This case may involve evidence concerning technical concepts, such as computer forensics and cryptocurrency, but you do not need a background in or prior understanding of any technical concepts. Are you a computer professional by education, training or experience?

21. Do you have concern that you are so unfamiliar with computers that you could not fairly evaluate evidence in a case involving computers?

22. Would your views on the laws governing illegal drugs, narcotics, or controlled substances make it difficult for you to impartially evaluate the evidence and render a fair verdict in this case?

23. Would your views on financial regulation or consumer protection, including laws involving cryptocurrency, make it difficult for you to impartially evaluate the evidence and render a fair verdict in this case?

24. Do you own or have you ever owned Bitcoin, Ethereum, Dogecoin, or any other kind of cryptocurrency or digital currency?

25. If you, any close family member, close friend, or household member has been audited by the IRS, would that make it difficult for you to be a fair and impartial juror in this case?

26. Do you know of any reason, or has anything occurred to you during this questioning, that might in any way prevent you from following my instructions on the law and being completely fair and impartial as a juror in this case?